Francisco Javier **MURILLO**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–91–00059–CR.

Court of Appeals of Texas,
El Paso.

Sept. 16, 1992.

John Gates, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for State.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

KOEHLER, Justice.

A jury convicted Francisco Javier Murillo, Appellant, of murder and subsequently assessed punishment at 50 years' imprisonment. In six points of error, Appellant seeks review of the judgment rendered by the trial court. We affirm.

In Point of Error No. One, Appellant argues the evidence is insufficient to support the murder conviction. Point of Error No. Two asserts error in the trial court's denial of Appellant's motion for a continuance. In Point of Error No. Three, Appellant challenges the trial court's admission, over objection, of testimony regarding an extraneous offense. In Point of Error No. Four, Appellant asserts error in the submission of a charge on the law of parties. In Appellant's fifth point of error, he argues the trial court erred in denying his request to include a charge regarding the misidentification by witnesses. The last point of error challenges the trial court's allowance, over objection, of the testimony of a rebuttal witness during the punishment phase who had not been disclosed by the State in the discovery process.

After the State rested, Appellant sought a directed verdict which was denied by the trial court. Appellant's first point of error challenges the propriety of that ruling arguing that the evidence is insufficient to prove beyond a reasonable doubt his guilt as to murder. *See generally, Madden v. State,* 799 S.W.2d 683, 686 (Tex. Crim.App.1990); *Arizmendez v. State,* 807 S.W.2d 436, 437 (Tex.App.—Houston [14th Dist.] 1991, no pet.) (appellate challenge to denial of directed or instructed verdict motion is challenge to sufficiency of evi-

dence).[1] In applying the proper standard of review, we are constrained to view all the evidence in a light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime as alleged in the application paragraph of the charge to the jury beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim. App.1991). Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Stoker v. State*, 788 S.W.2d 1, 6 (Tex.Crim.App.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). Nor do we resolve any conflict of fact, weigh the evidence or assign credibility to the witnesses as such functions are solely in the province of the jury. *Juarez v. State*, 796 S.W.2d 523, 524 (Tex.App.—San Antonio 1990, pet. ref'd). Instead, an appellate court is only "to determine if any rational trier of fact could have, based on the evidence admitted at trial, found the essential elements of the offense beyond a reasonable doubt." *Fernandez v. State*, 805 S.W.2d 451, 456 (Tex. Crim.App.1991).

The application paragraph of the charge instructed the jury to find Appellant guilty only if they believed beyond a reasonable doubt that:

> FRANCISCO JAVIER MURILLO, either individually or as a party as that term has been previously defined, on or about June 17, 1990, in El Paso County, Texas, did then and there as alleged in the indictment, intentionally or knowingly cause the death of an individual, MANUEL MANRIQUEZ SANCHEZ, by shooting [the deceased] with a firearm,....

In the general instructions, the court explained that a person is criminally responsible as a party to the offense if he acted "with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." The jury was, however, instructed that mere presence alone does not give rise to criminal responsibility as a party to an offense committed by another.

In its proper light, the evidence admitted at trial illustrates Appellant and other members of the Fatherless Gang were attending an unorganized gathering of "low riders" and "mini trucks" in a large parking lot. Testimony revealed the gathering was also attended by several hundred people which included members of numerous alleged rival gang factions. While many people were undoubtedly enjoying the display of customized vehicles and minding their own business, the testimony also revealed that numerous unrelated fights and incidents of criminal mischief occurred throughout the evening.

Manuel Sanchez (the deceased) and Fernando Duran were among those in attendance. According to Duran, he and Sanchez went to the parking lot in Sanchez' car to look at the other cars and to drink some beer. When Sanchez and Duran decided to leave, Sanchez was driving his car to exit the parking lot when they were attacked by several persons. Duran avoided one attacker's efforts to hit him through the open window on the passenger side of the car. Duran saw two others on Sanchez' side of the car and then heard a gunshot. Immediately thereafter, Sanchez "stepped on the gas" but he was unable to control the car because the bullet had penetrated his back and severed his spinal column leaving him paralyzed. Although Sanchez told Duran to stop the car because he could not feel his legs, the car collided with another parked vehicle prior to Duran being able to stop the car. With the assistance of another, Duran transferred Sanchez to the rear seat and rushed him to the hospital, but Sanchez did not survive.

The chief medical examiner for El Paso, Dr. Juan Contin, testified the gun was fired

---

1. At trial, denial of a directed verdict is proper if the State introduced any evidence to support each element of the offense because such evidence raises a fact issue within the province of the jury—not the court. *Bustillos v. State*, 832 S.W.2d 668, 676 (Tex.App.—El Paso, 1992, pet. filed); *Harris v. State*, 790 S.W.2d 778, 779 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd); *Ellis v. State*, 714 S.W.2d 465, 471 (Tex.App.— Houston [1st Dist.] 1986, pet. ref'd).

from close range—within two feet. The bullet entered the deceased's back on the left side and traversed his body in a slightly downward path through muscle tissue and Sanchez' spine, and the bullet was removed from the deceased's right arm pit.[2] The cause of death was attributed to bleeding within the chest cavity.

Several purported members of the Fatherless Gang gave statements to the police shortly after the fatal shooting. Each statement implicated Appellant as having participated in the raid upon the deceased's car. The State called these witnesses to testify regarding the events which culminated in the death. Each of these witnesses, either present or former gang members, became hostile to the State by contending the statements were coerced by the police or by contending the statements included words supplied only by the police. Two days after the murder, Jesus Montes, a.k.a. Pigeon, told the El Paso Police Department detectives that Appellant, a.k.a. Tiny, was the first person to rush to the deceased's car. Although Pigeon heard a gunshot, he did not know who fired the shot. Sonia Montes told the police that she saw four people rush to the car and heard one of the four say, "Plomealo" which she understood to mean "to shoot somebody." Both in her statement and at trial, Sonia admitted hearing everyone mention Tiny's name in regard to the shooting. Ricardo Montes, a.k.a. Grandpa, told the detectives he saw people throwing beer cans at the car and saw Tiny and six others run toward the car. At trial, Grandpa also admitted he heard that Tiny and several others were going to be initiated into the Fatherless Gang after the shooting. Oscar Juarez, a.k.a. Puppet, testified he was at the scene and saw Tiny there also. Although he denied making the statement, Puppet's statement to the police reiterated that Tiny was wearing a turquoise muscle shirt. Two El Paso Police Department detectives

testified to repeat the information given in the witnesses' statements and to dispel the notion that the statements were either coerced or improperly embellished by them.

Cecilia Gonzalez testified she and her husband attended the gathering to look at the customized vehicles. She saw the deceased's vehicle attempting to leave the parking lot at a high rate of speed, but it was blocked in, at which time, people began throwing beer cans and bottles at the car. Cecilia saw a teenager, whom she identified as Appellant, wearing a blue or turquoise shirt run toward the car. Appellant motioned with his arms and called others to join him. He then pulled a gun from his waistline when he got to the car. The witness said she turned to her husband to tell him what she saw when she heard a gunshot. As she returned her attention to Appellant, he was concealing the gun in his waistline. Cecilia did, however, also testify that Appellant was behind the deceased's car when the shot was heard and that she did not see Appellant fire his gun. This testimony was reaffirmed on cross-examination by defense counsel who attempted to impeach the witness with prior statements given to the police. To rehabilitate the witness, the State elicited testimony on redirect that when her "memory was very clear"—at the time the statement was given—Cecilia identified Appellant "as the person who had the gun ... [and] ... who called every one [sic] else to come and assist and participate—."

On June 21, 1990, Appellant was detained by police department detectives for a statement in regard to an unrelated aggravated assault.[3] After receiving his statutory juvenile warnings from a magistrate, Appellant told the detectives about the unrelated incident. Appellant mentioned that after the assault occurred, he was also "involved in a shooting where a guy was killed."[4] At this point, the detective

---

2. A ballistics expert testified the bullet was within a class of .38 caliber bullets.

3. This information was elicited in a hearing outside the presence of the jury in regard to determining the voluntariness of the statements given to the police.

4. This statement was not admitted into evidence nor presented to the jury; thus, it is not considered in regard to the sufficiency of the evidence.

stopped the interview and returned Appellant to a different magistrate for an additional set of juvenile warnings after which Appellant made another statement regarding the shooting. The second statement was admitted into evidence and published to the jury. As published to the jury by the prosecutor, the statement reads:

My name is Francisco Murillo. I'm 16 years old. My date of birth being September 1, 1973. This is a statement that I made to Detective Tabullo of the El Paso Police Department. Before making this statement I was taken before a judge for my warnings. I went over to the McMahan's parking lot—excuse me, on 6–17–90, I went over to the McMahan's parking lot. I walked over there. When I got there, there were a lot of guys from the Fatherless Gang. The guys that were there was Gregg, Casper, Fernie, Pigeon, Grandpa, Johnny, Snoopy, Victor, Puppet, Angel, Chaos, Lawrence, Yvonne, Gabby, Annette, Sonia and Martha. I saw a black Monte Carlo cruising by. Johnny said that these guys were from the Diablos. We all stared at him and then I saw the guy make the sign of the Diablos. Tavo then yelled at the guy, Fatherless. The guy panicked and tried to drive away. He turned in where there were a lot of cars and no exit. Gregg, Snoopy, Tavo and Lawrence ran to the car. I also ran to the car. Snoopy went over to the driver. I then heard a shot go off and saw Snoopy standing next to the driver, and he was putting the gun in his waist and covering it up with his T-shirt. I did see Lawrence go to the passenger and hit the guy. Tavo was standing next to Snoopy when the shot went off. I was standing behind the car about six feet away and Gregg was right behind me. After the shooting, we all ran to where we had been parked. The other guys got in the cars and drove away. I went walking to the apartments there on Carolina. I would like to say that on that night I was wearing a black T-shirt with stonewash jeans. Snoopy was wearing a blue shirt with gray pants. Gregg was wearing a white muscle shirt. Tavo was wearing a gray shirt with stonewash jeans. The gun that Snoopy had was a .38 hand gun and was black with black grips. I do know that Snoopy was the one that had the gun and I saw him putting it in his pants when he shot the guy in the Monte Carlo. I do not know where the gun is now, but I think that the Gun [sic] is at Snoopy's house or with Gregg. I want to say that Tavo was wearing the gray shirt and stonewash shorts. I did not shoot the guy in the Monte Carlo. But as soon as I heard the shot, I saw Snoopy put a .38 gun in his pants in the front. As I said before, the gun belonged to Gregg. I think that Gregg has the gun at this time. I have spoken to Snoopy and asked him why he shot the guy and he said, "no mas". I asked him where the gun was and he told me that Gregg had it. I have read the above statement consisting of two pages, and even though it's not in my exact words, it is the truth.

Subsequently, the deceased's sister testified her brother was not associated with gangs. She also testified he was not violent, nor did she know of "him having problems with a lot of people." After the sister completed testifying, the State rested.

As the defense's first witness, Appellant was called to the stand. He testified that on the day of the murder, he was sixteen years old. While Appellant stated he did not shoot the victim, he did admit to running toward the car. However, Appellant stated that he stopped after he heard the gunshot. Appellant denied (1) seeing anyone shoot a gun; and (2) having or owning a gun. In contradiction to his statement, Appellant denied even seeing a gun on the day of the murder. Later, Appellant did, however, testify he saw "Snoopy" with a gun when the incident happened. Nevertheless, Appellant denied (1) taking part in the shooting; (2) knowing what was going to happen; or (3) making any plans to shoot anybody. He also testified that he ran to the car "[b]ecause everybody started running and then I was going to follow them." After hesitating, Appellant stated, "I was crossing the street and that's when I heard

the gunshot." However, Appellant affirmed, on cross-examination, that everything in State's Exhibit 19 (the statement relating to the murder incident) was true. Thus, Appellant's direct testimony about his location at the time the fatal shot was fired contradicted his earlier statement which he confirmed as true on cross-examination.

Subsequently, the defense recalled Grandpa who again challenged the voluntariness of the statement he gave the police. Next, Appellant called Joe Villa, a.k.a. Chaos, who corroborated Cecilia Gonzalez' account of the facts by testifying on redirect that on the night of the murder, Appellant was wearing jeans and a blue muscle shirt. After both the defense and the State declined to ask any further questions of Chaos, the defense recalled Cecilia Gonzalez. She reiterated that she saw Appellant running toward the car "calling his friends to come help." Although she reaffirmed she did not see Appellant shoot anyone, she also restated that Appellant did have a gun. After the shot was fired, she did see Appellant put the gun back in his waistline. She also reconfirmed that the person she saw with a gun was wearing a blue or turquoise muscle shirt. On cross-examination by the State, Cecilia again identified Appellant as the person with the gun. She also stated that several days after the murder, she was shown a photo lineup. Subsequently, the following dialogue transpired.

Prosecutor: Did you pick out an individual that you said had a gun?

Witness: Instantly.

Prosecutor: Whose picture did you pick out at that time?

Witness: The guy who had the gun, his picture, and then several people there [sic] were there, too.

Prosecutor: What was his name?

Witness: The guy that I choose [sic] first with the gun, Francisco Murillo, or something like that.

On redirect by Appellant, Cecilia testified she had also seen Appellant, on the same evening, "bust up" another car.

After the defense rested, the State recalled a detective in rebuttal. The detective testified Appellant was detained on June 21 in an investigation of an unrelated aggravated assault. Next, he identified Appellant as the person detained by giving a description of what he was wearing in court. As the prosecutor asked the detective about the statements obtained, Appellant objected that the testimony would go into an extraneous offense. The objection was overruled, and the detective confirmed that during the statement regarding the aggravated assault, Appellant made reference to having been involved in a murder. Thereafter, both sides closed.

■ In that the evidence of Appellant's guilt is circumstantial, Appellant argues the evidence is insufficient to exclude all reasonable hypotheses other than his guilt. *See Goff v. State*, 777 S.W.2d 418, 420 (Tex.Crim.App.1989). *See also Carlsen v. State*, 654 S.W.2d 444, 449 (Tex. Crim.App.1983, on rehearing).[5] In excluding other reasonable hypotheses, every fact need not point directly to Appellant's guilt; rather, it is sufficient if the finding of guilt "is warranted by the combined and cumulative force of all the incriminating circumstances." *Gribble v. State*, 808 S.W.2d 65, 74 (Tex.Crim.App.1990), *cert. denied*, ─── U.S. ───, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991). Since the case was submitted to the jury upon the theory that Appellant acted as a party to the offense, the State was required to prove that while present at the scene of the offense, Appellant and others acted in concert in furtherance of a common purpose with an intent to promote, assist or encourage commission of the offense. *Burdine v. State*, 719 S.W.2d 309, 315 (Tex.Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Miranda v. State*, 813 S.W.2d 724, 732 (Tex.App.─San Antonio 1991, pet. ref'd). This necessary scheme of facts may

5. We note, however, that the Court of Criminal Appeals has recently overruled *Carlsen* and, prospectively only, disavowed application of the reasonable hypothesis test. *Geesa*, 820 S.W.2d at 159, 163.

be found from events which occurred before, during or after commission of the offense. *Burdine*, 719 S.W.2d at 315.

■ Since Appellant admitted being present and other testimony corroborates this fact, it was conclusively proven that Appellant was present at the scene of the murder. Appellant also fled, or as he admitted, "walked away" from the scene. Flight from the scene is a circumstance that may be considered by the jury as an inference of guilt. *Harris v. State*, 645 S.W.2d 447 (Tex.Crim.App.1983). The evidence in a light most favorable to the conviction, illustrates that Appellant encouraged commission of the offense by soliciting the assistance of others as he ran toward the deceased's vehicle and as someone, maybe Appellant, yelled: "Plomealo." This evidence illustrates Appellant's understanding of the common design to commit the offense. *See Id.* Afterward, Appellant and others were reportedly initiated into the Fatherless Gang. After the offense, Appellant also made contradictory or false statements concerning his involvement and culpability in the offense which constitutes inculpatory evidence that he was a party to the offense. *Miranda*, 813 S.W.2d at 733.

. ■ Furthermore, reconciliation of evidentiary conflicts is solely within the province of the jury which is entitled to accept or reject all, part or none of the testimony presented by both State and defense witnesses. *Id.* Portions of Appellant's statement validated parts of the allegedly coerced statements by the other gang members. While the fact is contradicted in the statement, both a State's and a defense witness described Appellant on the night of the murder as having worn a blue or turquoise muscle shirt. From the combined and cumulative force of all the incriminating circumstances, the jury was entitled to conclude that Appellant was in fact dressed in a blue muscle shirt, solicited the assistance of others and did possess a gun. *See generally, Gribble*, 808 S.W.2d at 74. Thus, contrary to Appellant's argument that the evidence showed he was merely a bystander lacking any culpability, it was

rational to conclude he was directly involved in the incident.

Having reviewed the evidence in a light most favorable to the verdict, we conclude that any rational trier of fact could have properly convicted Appellant of the offense alleged as charged in the application paragraph. This includes proof beyond a reasonable doubt of the essential elements of homicide, that Appellant acted as a party to the murder and that all reasonable hypothesis were excluded. As a result, Appellant's first point of error is overruled. Since the evidence is sufficient to sustain Appellant's conviction as a party to the offense, the propriety of the trial court's submission of the case on the parties' theory is established. *See Miranda*, 813 S.W.2d at 734. Thus, we also overrule Point of Error No. Four.

■ In Point of Error No. Two, Appellant challenges the trial court's denial of his motion for a continuance as a result of the State's attempt to introduce Appellant's statements into evidence which included the magistrates' certifications regarding issuance of the juvenile warnings. Allegedly, the magistrates' warnings had not been attached to the statements at the time defense counsel reviewed the State's file. Thus, a continuance was sought to prepare for or challenge the sufficiency of the warnings. The request was denied. The record fails to illustrate that the motion was either written or sworn to as required by Tex.Code Crim.Pro.Ann. arts. 29.03 and 29.08 (Vernon 1989), respectively. Therefore, nothing is preserved for review, and the point of error is overruled. *Montoya v. State*, 810 S.W.2d 160, 176 (Tex.Crim.App. 1989), *cert. denied*, — U.S. —, 112 S.Ct. 426, 116 L.Ed.2d 446 (1991).

■ In his third point of error, Appellant argues the trial court erred in allowing admission of testimony concerning an extraneous offense. Appellant testified on his own behalf during the guilty/not guilty stage of the trial. During cross-examination, Appellant objected, on Tex.R.Crim. Evid. 404(b) grounds, to the prosecutor's attempt to elicit testimony regarding the unrelated aggravated assault which oc-

curred prior to the murder. In response, the trial judge simply stated to the prosecutor: "You may proceed." Additional testimony regarding the aggravated assault was then introduced into the record from which Appellant now complains.

 In order to preserve error, if any, for review, a timely and specific objection must be followed by an adverse ruling. *See Ramirez v. State*, 815 S.W.2d 636, 643 (Tex.Crim.App.1991). In *Ramirez*, the Court of Criminal Appeals distinguished two incidents in which the trial court below responded to objections made by trial counsel. A response by the trial court which merely qualified a witness's need to answer a question "if she knows" was neither definite nor adverse to the objection. *Id.* Since the trial court's response was not conclusory, Judge Miller held that the trial court had not clearly overruled the objection. However, an unqualified directive by the trial judge that a witness answer (such as, "Let him answer the question") constitutes an implicit adverse ruling which preserves error. *Id.* at 650. We conclude the response by the trial court in the instant case, "You may proceed", was an attempt to ignore or avoid the objection and did not constitute a conclusory or definite ruling adverse to the objection. Since it is not "clear from the record the trial judge in fact overruled [Appellant's] objection …," any error is waived. *Id.* at 643.

 Assuming solely for the sake of argument that the trial judge's response did constitute an adverse ruling, we find any error in the admission of the extraneous offense evidence was waived by the subsequent unobjected-to admission of similar evidence during the State's rebuttal.[6] The prosecutor asked the witness, one of the detectives, about the circumstances which led to Appellant's initial detention. The detective responded that Appellant

was first picked up for aggravated assault. Several questions later, Appellant objected when the State attempted to elicit testimony regarding the statements taken during that detention. The objection—on grounds of extraneous offense—was overruled. In order to be timely, an objection must be lodged as soon as the objectionable nature of the testimony became apparent. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App.1991). As soon as the detective mentioned the aggravated assault, the objectional nature of the testimony became apparent, and Appellant should have objected at that time and requested an instruction to the jury to disregard the answer. *Id.* Since preservation of error requires an objection at the earliest opportunity, Appellant's failure to do so at this subsequent admission of the extraneous offense evidence constitutes a waiver to any improper earlier admission of the same evidence—otherwise known as the doctrine of curative admissibility. *Stoker*, 788 S.W.2d at 12. Thus, any error in the admission of the testimony is waived, and Point of Error No. Three is overruled.

 In his fifth point of error, Appellant argues the trial court erred in refusing to submit his specially requested instruction regarding the purportedly conflicting identification testimony. While Appellant did request submission of such an instruction during the charge conference and the record reflects the trial judge looked at a draft of Appellant's proposed submission, no copy of the requested instruction nor a dictation of the proposed submission is included in the record. As a result, Appellant's complaint has not been preserved for appeal. *Jackson v. State*, 717 S.W.2d 713, 716 (Tex.App.—San Antonio 1986, pet. ref'd, untimely filed).[7] Point of Error No. Five is overruled.

 In his last point of error, Appellant asserts the trial court erred in allow-

---

6. The State argues the error was waived when similar testimony was adduced prior to the complained-of incident. We disagree because each point in the record to which the State refers was outside the presence of the jury. Prior admission of testimony to the trial judge alone who was deciding a question of law does not constitute a procedural default waiving error in regard to the subsequent admission, over

objection, of the same evidence before the trier of fact.

7. We note the trial judge stated he would "give it to the clerk to be filed with the papers in this case." However, it is not the duty of this Court to investigate the absence of the instruction from the record, and without knowing the content of the requested instruction, we are incapa-

ing, over objection, the admission of testimony of a punishment phase rebuttal witness by the State who had not been disclosed during discovery in contravention of Appellant's request for the identity of all prosecution witnesses, including rebuttal witnesses, which had been granted by the court.[8] Appellant fails to cite any authority on point, but merely contends he was surprised by the testimony. Additionally, Appellant fails to argue how the surprise, if any, prejudiced his defense at the punishment phase. The trial court's exercise of discretion in allowing the undisclosed witness to testify will not be reversed unless it is shown the State acted in bad faith and the accused could not have reasonably anticipated that the witness would testify. *Stoker*, 788 S.W.2d at 15. Nothing in the record indicates any bad faith on the State's behalf, nor did Appellant explain to the trial court how he could not have reasonably anticipated the testimony of the juvenile probation officer during the punishment phase of the trial. For the foregoing reasons, we overrule Point of Error No. Six.

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.

ble of determining whether the trial court erred in denying Appellant's request.

8. We note the existence of case law which explains that the State need not disclose the identity of rebuttal witnesses. *See Elkins v. State,* 543 S.W.2d 648, 649 (Tex.Crim.App.1976); *Hoagland v. State,* 494 S.W.2d 186, 189 (Tex.Crim.App. 1973).