**Raymond HIDALGO, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–96–00441–CR.**

Court of Appeals of Texas, San Antonio.

April 30, 1997.

George Scharmen, Allen F. Cazier, Law Offices of Allen Cazier, San Antonio, for appellant.

Roderick B. Glass, Assistant Criminal District Attorney, San Antonio, for appellee.

Before HARDBERGER, C.J., and LÓPEZ and ANGELINI, JJ.

## INTRODUCTION

HARDBERGER, Chief Justice.

Raymond Hidalgo, Jr. was originally charged as a juvenile offender. The juvenile court waived jurisdiction and transferred the case to an adult court where Hidalgo was indicted for the offense of attempted capital murder. Hidalgo pleaded not guilty and the case was tried to a jury. The jury found Hidalgo guilty as charged and assessed punishment at 50 years confinement in the Insti-

tutional Division of the Texas Department of Criminal Justice. We affirm.

## FACTS

This case arose out of an apparent gang shooting. On Christmas night in 1994, Charisma Perez, one of the victims of the shooting, went to a Taco Cabana with her boyfriend, Chris Garcia, and her friend, John Bernal. While inside, Perez noticed a group of young people looking at her. These young people were Hidalgo, his friend Samuel Hernandez, Samuel's friends Cliff Deleon and Edgar Gamaro, and Samuel's brother, cousin, and his brother's girlfriend. Perez ignored the group and went outside to sit in the covered patio area with Garcia and Bernal. Hidalgo's group then began throwing gang signs at Garcia and an argument ensued. Eventually, the group left and waited outside in their cars in the parking lot.

When Perez, Garcia, and Bernal finished eating and exited the Taco Cabana, they noticed that two cars carrying the group of young people they encountered inside the restaurant had pulled up and blocked their vehicle. Hidalgo and his group were preparing to fight with Garcia and Bernal when the Taco Cabana security guard intervened and made them leave the premises. After Hidalgo and his group left, Perez, Garcia, and Bernal drove to Bernal's apartment a few blocks away. They pulled into the parking lot of the apartment complex and parked the car. When Perez exited the vehicle, she noticed Hidalgo leaning out of a vehicle coming at her with a hand gun pointed in her direction. Hidalgo fired at her and Garcia three or four times. Perez was hit in the abdomen and the left arm. She crawled beneath the car for protection and several more shots were fired at Garcia. Garcia was not hit.

Hidalgo appeals his conviction for attempted capital murder in connection with this incident and claims in five points of error that: (1) the evidence was legally insufficient to support his conviction; (2) the trial court erred in admitting evidence of extraneous offenses; (3) the juvenile court failed to acquire jurisdiction over him prior to certifying him as an adult; (4) he was denied effective

assistance of counsel because he was subjected to a psychological examination without notice that the examination was pursuant to a motion to transfer his case to criminal court; and (5) his Sixth and Fourteenth Amendment rights were violated when the State refused to notify his appointed counsel of the psychological examination.

## SUFFICIENCY OF EVIDENCE

■ In his first point of error, Hidalgo claims that no evidence was adduced at trial to support his conviction. In reviewing challenges to the legal sufficiency of the evidence, we must consider whether, viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State,* 820 S.W.2d 154, 156–57 (Tex. Crim.App.1991); *Little v. State,* 758 S.W.2d 551, 562 (Tex.Crim.App.), *cert. denied,* 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988). We must be mindful that the jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App.1981).

■ Hidalgo contends that the evidence is legally insufficient to support his conviction for attempted capital murder because the State failed to prove that he killed at least one person, making his crime a capital offense. Hidalgo argues that when the State proved that he attempted to kill two people, and it failed to prove the capital predicate act of killing a person, the State proved only that he attempted the first degree felony of murder. We disagree. The Texas Penal Code provides that a person commits the offense of capital murder if he murders more than one person during the same criminal transaction. Tex.Penal Code Ann. § 19.03(a)(7)(A) (Vernon 1989). However, Hidalgo was convicted only of *attempted* capital murder. A person is guilty of an attempt to commit a crime "if, with specific intent to commit an offense, he

does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* § 15.01(a). Accordingly, the State was required to prove only that Hidalgo attempted to murder more than one person during the same criminal transaction, not that he actually murdered more than one person or at least one person. In support of this conclusion, it is interesting to note that under Hidalgo's construction of attempted capital murder, a person who planted a bomb on an airplane and attempted to kill all of the passengers would only be guilty of multiple attempted murders, rather than attempted capital murder. We cannot agree that the legislature intended this construction.

■ The jury in this case was instructed to find Hidalgo guilty of attempted capital murder if they found beyond a reasonable doubt that he "intentionally or knowingly attempt[ed] to cause the death of more than one person during the same criminal transaction." The jury's finding of guilt in this regard is supported by legally sufficient evidence. The evidence at trial established that Hidalgo followed Perez, Garcia, and Bernal to Bernal's apartment complex after the confrontation at the Taco Cabana. Perez and Garcia were standing next to each other by the car when the shooting began. Shots were fired in the direction of both Perez and Garcia. Three witnesses, including Perez, positively identified Hidalgo as the shooter. Viewing this evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the essential elements of the offense of attempted capital murder proven beyond a reasonable doubt. Hidalgo's first point of error is overruled.

## EVIDENCE OF EXTRANEOUS OFFENSES

Hidalgo claims in his second point of error that the trial court erred in admitting evidence of extraneous offenses because the State failed to show beyond a reasonable doubt that Hidalgo committed the offenses. The evidence of which Hidalgo complains was introduced by the State during the punishment phase of the trial. The State called

several police officers who testified regarding their investigation of a stolen vehicle. The officers testified that they chased three individuals in the stolen car. One of the individuals chased and ultimately apprehended was Hidalgo.

■ The State argues that Hidalgo has not preserved this point of error for appellate review. We agree. To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling he desires. TEX. R.APP.P. 52(a). In this case, four police officers testified regarding the stolen vehicle and Hidalgo's involvement in the unauthorized use of this motor vehicle, with no objection from Hidalgo's counsel. Hidalgo's trial counsel waited until after all of these officers had testified to make a motion out of the presence of the jury asking the court to instruct the jury to disregard the testimony regarding Hidalgo's participation in the theft. The court denied the motion. Because Hidalgo failed to make an objection until after the evidence had been admitted, the objection was untimely and this point of error was waived. *See Murillo v. State,* 839 S.W.2d 485, 493 (Tex.App.—El Paso 1992, no pet.) (noting that because preservation of error requires objection at earliest opportunity, failure to object until after extraneous offense evidence has been admitted constitutes waiver). Hidalgo's second point of error is overruled.

## JUVENILE COURT'S JURISDICTION

Hidalgo claims in his third point of error that the juvenile court failed to acquire jurisdiction over him and, thus, that the transfer of his case to criminal court was invalid. He contends that proper procedures were not followed prior to his certification as an adult and the transfer of this case to criminal court. Specifically, Hidalgo argues that (1) his court-appointed attorney received no notice of the scheduled psychological examination prior to the exam date; (2) he and his mother were not served with a summons

until after the date of the psychological examination; (3) the order authorizing service of the summonses was defective; and (4) the summons to Hidalgo was defective in that it failed to state the location of the court, the date the petition was filed, the name of the petitioner's attorney, the time within which Hidalgo should file an answer, the address of the clerk, and the purpose of the scheduled hearing. These contentions are considered in a somewhat different order below.

■ We note initially that Hidalgo may raise only jurisdictional errors in the transfer process for the first time on appeal from his conviction subsequent to the transfer. *Seelke v. State,* 739 S.W.2d 497, 498 (Tex. App.—Beaumont 1987, no pet.). This is because at the time Hidalgo was transferred, a juvenile was allowed an appeal of the transfer or certification order under the family code. *Id.; see* TEX.FAM.CODE ANN. § 56.01(a) & (c)(1) (Vernon 1986).[1] Accordingly, defects in the transfer process that are non-jurisdictional must have been raised in an appeal of the transfer order, and are waived if raised for the first time on appeal from a conviction. *Ex parte Calvin,* 689 S.W.2d 460, 463 (Tex.Crim.App.1985); *Stubblefield v. State,* 659 S.W.2d 496, 498 (Tex. App.—Fort Worth 1983, no pet.). It appears that only Hidalgo's allegations regarding an improper summons are jurisdictional in nature. *See In re C.C.G.,* 805 S.W.2d 10, 12 (Tex.App.—Tyler 1991, pet. denied) (stating that issue of whether juvenile received proper summons is jurisdictional). Thus, we consider only Hidalgo's allegations regarding the summons. Hidalgo's complaints regarding his attorney's failure to receive notice of the psychological examination are addressed in our discussion of Hidalgo's fourth and fifth points of error.

■ The section of the Texas Family Code dealing with waiver of exclusive jurisdiction by a juvenile court and discretionary transfer to a criminal court provides that the petition and notice requirements of the code must be satisfied prior to any waiver and transfer. TEX.FAM.CODE ANN. § 54.02(b). This section

---

1. Section 56.01(c) was amended in 1995, effective January 1, 1996, to delete any reference to an appeal from a transfer order entered under section 54.02. *See* Act of May 31, 1995, 74th Leg., R.S., ch. 262, § 48, 1995 Tex.Gen.Laws 2517, 2546.

also requires that the summons state that the hearing is for the purpose of considering discretionary transfer to criminal court. *Id.* The State complied with the notice and summons provisions of the Texas Family Code in this case. First, contrary to Hidalgo's contentions, the summons in the instant case stated the purpose for which Hidalgo was commanded to appear. The summons commanded Hidalgo to appear on March 27, 1995 "for the purpose of considering Discretionary transfer to Criminal Court for *Raymond Hidalgo, Jr.* pursuant to Section 54.02(b) of the Texas Family Code." Also contrary to Hidalgo's contentions, the summons stated the location of the court at which Hidalgo was to appear and the date on which he was to answer. Further, although Hidalgo is correct in his contentions that the summons failed to state the date the petition was filed, the name of the attorney for the petitioner, and the address of the clerk, we cannot agree that these deficiencies are fatal.

■ With regard to the order authorizing service of the summons, Hidalgo is correct that the order directs the probation officer to serve the summons upon Raymond Salazar, rather than Raymond Hidalgo, Jr. This clerical error no doubt resulted because the juvenile probation officer directed to serve the summons was named Richard Salazar. The order entered by the juvenile court in this case was entered pursuant to section 53.06 of the Texas Family Code. Section 53.06 provides in pertinent part:

(a) The juvenile court shall direct issuance of a summons to:

   (1) the child named in the petition;

   (2) the child's parent, guardian, or custodian;

   (3) the child's guardian ad litem; and

   (4) any other person who appears to the court to be a proper or necessary party to the proceeding.

TEX.FAM.CODE ANN. § 53.06. The parties have cited no Texas cases addressing the effect of a clerical error in an order entered by a juvenile court pursuant to this section of the Texas Family Code. However, cases addressing the necessity of an order directing service pursuant to section 53.07 are instructive. Section 53.07(c) of the code provides: "Service of the summons may be made by any suitable person under the direction of the court." *Id.* § 53.07. Texas courts have held that an express order directing service of the summons is not necessary under this section because a presumption exists that the officer serving the summons would not have served the summons unless directed by the juvenile judge. *See Sauve v. State,* 638 S.W.2d 608, 610–11 (Tex.App.—Dallas 1982, pet. ref'd); *see also Chandler v. State,* 695 S.W.2d 248, 249 (Tex.App.—Austin 1985, no pet.). If a formal, written order is not even necessary under this section, it seems that a clerical error under section 53.06 would not deprive the juvenile court of jurisdiction.

■ Further, the effect of a clerical error in the order directing service of the summons is a question of form rather than substance, and is not a jurisdictional issue authorizing a collateral attack on the transfer order. As the Dallas Court of Appeals noted:

> Although a juvenile may not waive service of process, he may waive the right to complain of whether a formal order need be entered by the juvenile judge finding the service suitable and directing service, both of which matters go to form rather than substance.

*Sauve,* 638 S.W.2d at 611. In this case, the record reflects that the correct name—Raymond Hidalgo, Jr.—was listed on the summons, Hidalgo signed a notice of service indicating that he was served with the summons two weeks before the scheduled transfer hearing, and Hidalgo was present at the hearing along with his attorney and his mother. The substance of the Texas Family Code's summons requirements was clearly fulfilled in this case and Hidalgo's complaints regarding the order directing service, like those considered by the Dallas court, go only to form. Accordingly, Hidalgo has waived his right to complain of defects in the order. Because Hidalgo's remaining complaint in point of error three regarding notice to himself and his mother of the psychological examination is likewise non-jurisdictional in nature, it has been

waived as well. We overrule Hidalgo's third point of error.

## SIXTH AMENDMENT RIGHT TO COUNSEL

In his fourth and fifth points of error, Hidalgo claims that his Sixth Amendment right to counsel was violated because he was subjected to a psychological examination before his court-appointed counsel was notified of the examination. The juvenile court signed the order for the psychological examination on February 27, 1995. The record indicates that the district attorney's office sent a copy of the motion and order for the psychological examination to Hidalgo's attorney by certified mail on March 6, 1995. The green card evidencing receipt by Hidalgo's attorney, however, is not included in the record. The examination took place on March 7 and 8, 1995. Hidalgo's appointed counsel testified at a pretrial hearing that he did not receive notice of the examination until March 23, when he received a facsimile transmission from the district attorney's office.

▮▮▮ The State does not address the merits of Hidalgo's contentions and argues only that Hidalgo has waived his fourth and fifth points of error because neither complaint pertains to a jurisdictional matter. The State's waiver argument does not appear to be valid, however, as prior judgments may be collaterally attacked if they are void *or* if they are tainted by constitutional defects. *Galloway v. State,* 578 S.W.2d 142, 143 (Tex. Crim.App.1979). Because Hidalgo's claims are of constitutional dimension, he has not waived his right to complain.

▮▮▮ Turning to the merits of Hidalgo's claims, the heart of his argument seems to be that he "was denied the assistance of his attorney in making the significant decision of whether to submit to the examination and to what purpose the psychologist's report would be employed." Hidalgo relies upon *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), and *Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). In *Estelle,* the United States Supreme Court held that defense counsel must be given advance notice of a psychological examination designed to determine future dangerousness in a death-penalty case because the decision of whether to submit to such an examination is " 'literally a life or death matter' " which a defendant charged with a capital crime should not be required to face without " 'the guiding hand of counsel.' " *Estelle,* 451 U.S. at 471, 101 S.Ct. at 1877 (quoting *Smith v. Estelle,* 602 F.2d 694, 708 (5th Cir.1979), and *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932)). The Court reiterated this holding in *Satterwhite,* when it found that a psychiatrist's testimony was admitted in violation of the Sixth Amendment because defense counsel was not notified of the psychological examination in advance. *Satterwhite,* 486 U.S. at 254–55, 108 S.Ct. at 1796–97. The Court in *Satterwhite* rejected the State's argument that defense counsel had constructive notice of the examination from the ex parte motions and orders in the court's file. *Id.* at 255, 108 S.Ct. at 1796–97.

*Estelle* and *Satterwhite* are distinguishable in at least two primary respects, and we cannot agree that the holdings in these cases dictate the same result in the case at bar. First, they involved adjudicatory proceedings in criminal court, rather than juvenile transfer proceedings. Although this court has refused to distinguish between adjudicatory and non-adjudicatory proceedings in reviewing evidentiary rulings, *In re S.A.R.,* 931 S.W.2d 585, 586 (Tex.App.—San Antonio 1996, pet. filed), we have not so held in the context of a defendant's Sixth Amendment right to counsel. Further, both *Estelle* and *Satterwhite* address the right to counsel in the context of psychological examinations conducted to determine future dangerousness for purposes of imposing the death penalty, not examinations conducted only to determine whether a juvenile should be tried as an adult. The proceedings themselves and the rights at stake in these cases are clearly of a greater magnitude than those involved in the instant case.

Moreover, although the parties have cited no Texas cases specifically addressing the notice issue in a juvenile-transfer-proceeding context, the Texas Court of Criminal Appeals has addressed the issue of a juvenile's right to counsel during the examination itself. In the very recent case of *Lagrone v. State,* 942

S.W.2d 602, 612 (Tex.Crim.App.1997), the court held that a juvenile does not have a Sixth Amendment right to have counsel present during a psychiatric examination. This holding is instructive at least to some extent because if the Sixth Amendment is not violated when a juvenile's attorney is excluded from the examination itself, it stands to reason that no constitutional violation occurs when an attorney is not notified of the examination until after it has taken place.

Prior to the examination, it is difficult to see the vital need Hidalgo mentions to consult with counsel regarding the examination. Hidalgo first contends that he was "denied the assistance of his attorney in making the significant decision of whether to submit to the examination." He cites *Estelle* in support of this contention. What Hidalgo fails to recognize, though, is that there was no decision to be made in his case as to whether to submit to the examination because the examination is mandatory under the Texas Family Code. *See* TEX.FAM.CODE ANN. § 54.02(d) (stating that prior to the transfer hearing, "the juvenile court *shall* order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense") (emphasis added). Hidalgo also contends that he was denied the assistance of his attorney in determining the purpose of the psychological examination. This argument is not entirely convincing either, however, because the psychologist's report states that Hidalgo was "apprised of his rights with regard to psychological testing and as to the purpose of the ... evaluation." The psychologist further noted that Hidalgo "indicated that he understood the same and that he was willing to proceed."

In light of the above, we conclude that Hidalgo's Sixth Amendment right to counsel was not violated when his court-appointed counsel was not notified of the psychological examination until after it had taken place. Hidalgo's fourth and fifth points of error are overruled.

The judgment of the trial court is affirmed.