**Opinion issued May 2, 2019**



In The

# Court of Appeals

### For The

## First District of Texas

———————————

## NO. 01-18-00223-CR

———————————

## WILLARD BERNARD WELCH, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Case No. 16-CR-2827**

---

## MEMORANDUM OPINION

A jury convicted appellant, Willard Bernard Welch, Jr., of the second-degree

felony offense of possession of between four and two hundred grams of a controlled

substance, methamphetamine.[1] After finding the allegations in two enhancement paragraphs true, the jury assessed appellant's punishment at twenty-five years' confinement.[2] In his sole issue on appeal, appellant contends that the trial court abused its discretion by allowing the State, during closing arguments, to make an argument that improperly shifted the burden of proof to appellant.

We affirm.

## Background

On the evening of October 18, 2016, Galveston County Sheriff's Office Sergeant J. Davidson was on patrol in San Leon, Texas, when he encountered appellant, who was driving a car that had a non-functioning brake light. Sergeant Davidson turned on his emergency lights to conduct a traffic stop. Instead of immediately pulling over, appellant's vehicle "continued to roll" two or three houses down the street before appellant pulled through a gate and into the driveway, "all the

---

[1]    *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d) (providing that person commits second-degree felony if person possesses between four and two hundred grams of controlled substance listed in penalty group one); *id.* § 481.102(6) (listing methamphetamine as controlled substance in penalty group one).

[2]    The State presented evidence that appellant had prior felony convictions for aggravated robbery and theft—the two prior offenses charged in the enhancement paragraphs—as well as prior felony convictions for evading arrest and attempting to take a weapon from a police officer and prior misdemeanor convictions for terroristic threat, assault, criminal trespass, and resisting arrest. If, on trial of a felony offense, it is shown that the defendant has two prior final felony convictions, on conviction for the charged offense the defendant shall be confined for twenty-five to ninety-nine years or for life. *See* TEX. PENAL CODE ANN. § 12.42(d).

way up to the residence." The driveway was on the left side of the house, and at least three vehicles were parked in the driveway. Another car was parked in front of the center of the house, and when appellant and Sergeant Davidson pulled into the driveway, two people, including a man wearing red shorts, were standing near the car in the center and then walked over to one of the cars on the left side of the house. Appellant pulled over to the far right side of the house and parked. Sergeant Davidson testified that although behavior such as appellant's occurs "from time to time," it is not normal, and, in his experience, he "find[s] people are buying time to hide things or gain distance on me to try to get out of the car faster or anything like that."

Sergeant Davidson believed that appellant was preparing to flee the area, so Davidson parked his vehicle at the gate and ran towards appellant's vehicle. Appellant opened the door to his vehicle, but he was not able to get out before Sergeant Davidson reached the car. Appellant was "upset, belligerent, [and] angry," and he demanded to know why Sergeant Davidson had stopped his car. Sergeant Davidson described appellant's behavior as atypical, and, in response, he ordered appellant out of the car. Once appellant was out of the vehicle, Davidson attempted to place appellant in handcuffs due to appellant's level of aggression. Although Davidson was able to restrain appellant's right hand, appellant was acting "squirrely" and moving around, and Davidson could not immediately cuff

3

appellant's left hand. Sergeant Davidson eventually handcuffed appellant and escorted him to Davidson's patrol car. On the way to the patrol vehicle, an unidentified person approached and spoke with appellant. Appellant asked this person to retrieve his cigarettes from the house.

After Sergeant Davidson secured appellant in the patrol car, Davidson returned to appellant's vehicle to perform an inventory search. When he returned, Davidson "observed some baggies that were beneath [appellant's] vehicle in view on the ground by the vehicle where we were standing." Sergeant Davidson testified that he had not noticed these baggies when he initially approached appellant's car. He stated that, when he had first approached, he had been focused on appellant and had not been looking for anything on the ground and "nothing [had] caught [his] eye." Sergeant Davidson retrieved his camera from his patrol car and took a picture of the baggies on the ground.

Sergeant Davidson testified that "[a] couple of the bags were in line with the running board area [of appellant's vehicle] and a couple appeared in the back that were closer in line to the rear tire." Davidson believed that the bags contained narcotics, specifically, methamphetamine, and he took custody of the bags and secured them in his patrol car. He acknowledged that he did not have gloves on when he picked up these baggies and that this would affect the ability to recover fingerprints from the baggies. Davidson also testified that the weather was "mildly

4

humid" that night and that there was "a light light condensation on the ground around the bags." There was, however, no condensation on the bags themselves, and despite the proximity of the bags to the tires of appellant's vehicle, the bags were sitting on top of the grass, "not crushed into it." Sergeant Davidson thus believed that the bags were "fresh" and that they belonged to appellant. When asked why he believed that, Davidson stated, "The area where [the bags] were is the area where we were while he was moving around before I walked away and brought him back to my car."

The trial court admitted a copy of the recording from Sergeant Davidson's dash-camera in his patrol car. On the recording, appellant asked a person to "get his cigarettes out of the house." When Sergeant Davidson searched appellant's vehicle, he discovered cigarettes in the center console of the car. Davidson stated that he believed appellant was being deceptive when he made this request and that he assumed that, by asking the person to get cigarettes, appellant "was trying to get [the other person] to go to the car." Davidson believed that appellant had wanted this person to go to appellant's car and "pick up what was on the ground." Sergeant Davidson testified that there were no other vehicles near appellant's car and no people in the immediate area around appellant's car, although someone did at one point come out of the house where appellant had stopped his car.

On cross-examination, defense counsel questioned Sergeant Davidson about picking the baggies up with his bare hands.[3] Counsel also questioned Davidson about whether the baggies were underneath the vehicle, and Davidson stated, "[a] couple were under the vehicle along . . . the running board area near the under side." Counsel showed Davidson one of the pictures Davidson had taken at the scene and pointed out that it did not appear that the baggies were underneath the car. Davidson testified, "They are clarified to being close to the under side of it." Davidson also agreed with counsel that, while he had testified that there was condensation on the ground, no condensation on the ground or on the tire was visible in the scene photographs. No contraband was recovered from inside appellant's car.

Defense counsel also questioned Sergeant Davidson about the contents of the dashcam video and, during his questioning, used a photograph of the house counsel had taken at a date after appellant's arrest. Davidson agreed with the defense counsel that there were several cars located to the left of the residence where appellant stopped, as well as one "more centered" in front of the house, and appellant pulled up to the right side of the house. The video shows two people standing around one of the other vehicles, including a man wearing red shorts. These people later

---

[3] Defense counsel called Galveston County Sheriff's Office Captain T. Keele, who testified that, in his opinion, the best practice is for officers to wear gloves when picking up and handling items that might have evidentiary value, but departmental policy does not mandate this.

approached the house and then walked back to the other vehicle. Sergeant Davidson testified that he did not investigate who these people were and that, instead, he had been concerned with appellant and his vehicle. Sergeant Davidson also agreed with defense counsel that the person appellant spoke to at the scene and asked to retrieve his cigarettes, was a separate person from the two people standing around the other vehicle and this person did not become involved in Davidson's investigation. Davidson testified that this other person did not go near appellant's vehicle, so he did not feel it was necessary to investigate this person any further.

After other deputies arrived at the scene, Sergeant Davidson's dashcam continued recording, but no audio was available. One of the other deputies approached the front porch of the house, where at least one person was standing. Sergeant Davidson did not know which deputy approached the house, he did not know if that deputy spoke to anyone on the porch of the house, and he did not identify any of the people who were near the house.

On re-direct examination, Sergeant Davidson agreed with the prosecutor that this was a "throw down" case, in which the suspect attempted to get rid of the narcotics that he possessed. When asked when suspects typically throw their drugs, Davidson stated, "A lot of times when they are [going] to be placed in custody or if there is a scuffle, they may try to turn around and get away and throw it or toss it." He testified that he has worked hundreds of drug cases and that he has never "walked

up and found drugs lying around." Davidson testified that he believed the contraband he discovered belonged to appellant, and he stated his rationale for this belief: "Based on just from the start. The attitude I received when I got him out of the car to the inability to get him under [my] control, the movement, suddenly being calm after we moved away from the vehicle that led me to believe they all came from him."

Rachel Aubel, a forensic scientist for the Texas Department of Public Safety, tested the substances recovered from near appellant's vehicle. Aubel testified that two baggies from the scene contained a total of 4.28 grams of methamphetamine and that two orange tablets, also recovered from the scene, contained a total of 0.37 grams of methamphetamine.

During closing argument, defense counsel heavily criticized Sergeant Davidson's investigation, stating that Davidson "did as little as possible on his job." Defense counsel stated:

> Then how many people are on the scene maybe three. We don't know for sure. We can see three. I don't know how many people may or may not have been in the house. I don't agree that we can see that there is not another person on video because there are dark areas there. I do agree there was not a car there and that's why [appellant] chose that particular parking spot because he thought he was parking, remember. . . . I can't interview the person that [appellant] talked to that Sergeant Davidson testified was the possibly third person on scene and ask about their interchange because [Davidson] didn't tell me who he is. He didn't collect that information. He didn't say hey, you're on my scene. I need to know who you are all even just as a witness. He didn't do it. I can't ask the guy in the red shorts, I can't ask him hey,

have you ever been arrested for methamphetamine. I don't have that opportunity because Sergeant Davidson didn't think it was important enough to ask him. When you watch the video, I want you to watch, they pull up two people disappear into the house. Later they appear and then go back into the house. How do I know that the man in the red shorts didn't go in front of the house freaking out, run around the back of the house and throw the dope? How do I know? I don't know. I don't. I don't even know who the man is. I can't ask him. How do I know if two of the other people on the video don't have prior convictions for possession of a methamphetamine? I can't. I don't know who they are.

Counsel also argued:

I want you to watch those people come and go [from the house], the at least three that we know of. I suggest to you there could've been more. I don't know. I think I see on the video someone knocking on the door and talking to the people inside the residence but I don't have the benefit of knowing whether they did or not because Davidson didn't document anything, won't let me know what happened with the deputies and no one is here to testify. So, I don't know. Maybe there were five people inside the house. Maybe there was six. I have no idea. Is it reasonable for me to assert that one of the unidentified people on the scene went and tossed drugs, absolutely. I don't know what they are doing. There is three people that could be freaking out. There is a cop out there. Got somebody pulled out and there is a car right there. Let me throw my stuff there before they come to me.

Counsel further argued that it was reasonable to believe the drugs were already present on the ground when appellant pulled up to the house, noting that the baggies were "nowhere near underneath [the] car." He argued that Sergeant Davidson arrested appellant "and Mr. Red Shorts comes over there [to the car] and tosses the dope."

In response, the State argued that appellant, upon realizing that he could not run from the car once he pulled into the driveway, "did the best thing he could" by

9

tossing the drugs to the ground and trying to put at least some distance between himself and the drugs.

The State then made the following argument:

> Your common sense tells you if nobody was sitting over there [by where appellant parked], there were no cars and there were no people those drugs didn't appear out of nowhere. Did someone walk out of the back door while there is a police officer on the scene, run around while the police officer is back at his car and runs and throws the drugs under the car, who believes that? You guys don't believe that. I don't believe that either. Neither did Sergeant Davidson. Now, yes, do I wish I had DNA and do I wish I had fingerprints, do I wish I knew who the people were, yes, I do. But that doesn't mean I don't know who that dope belonged to. And let me tell you something. [The address of the house,] these pictures [admitted during cross-examination of Sergeant Davidson] were taken by [defense counsel]. If [counsel] wanted to go out there and talk to them, he should have knocked on the door. They are there for him to talk to.

Defense counsel objected on the basis that the prosecutor's statement "is shifting the burden." The trial court responded, "Proceed," and the prosecutor ended his argument by stating that Sergeant Davidson "did his job that night" and that the drugs recovered from the scene belonged to appellant.

Ultimately, the jury found appellant guilty of the offense of possession of between four and two hundred grams of methamphetamine. After finding the allegations in two enhancement paragraphs true, the jury assessed appellant's punishment at twenty-five years' confinement. This appeal followed.

## Improper Jury Argument

In his sole issue on appeal, appellant contends that the trial court erred by allowing the State to make an improper jury argument. Specifically, appellant argues that the prosecutor's statement "If [defense counsel] wanted to go out there [to the house where appellant was arrested] and talk to [the other unidentified people at the scene], he should have knocked on the door" improperly shifted the burden of proof to appellant to affirmatively produce evidence in his defense.

### A.    *Standard of Review*

We review a trial court's ruling on an objection regarding improper jury argument for an abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004); *Stahmann v. State*, 548 S.W.3d 46, 68 (Tex. App.—Corpus Christi 2018, pet. granted); *Williams v. State*, 417 S.W.3d 162, 174 (Tex. App.— Houston [1st Dist.] 2013, pet. ref'd) ("A trial court has broad discretion to control the scope of closing argument."). Proper jury argument typically falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). "The State is afforded wide latitude in its jury arguments and may draw all reasonable, fair, and legitimate inferences from the evidence." *Williams*, 417 S.W.3d at 174. It is permissible for a prosecutor to "attack the defense's argument." *Id.* When

11

examining challenges to a jury argument, we consider the remark in the context in which it appears. *Mims v. State*, 434 S.W.3d 265, 275 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

## B.    *Preservation of Error*

As an initial matter, we address whether appellant preserved his complaint concerning the State's allegedly improper jury argument for appellate review.

Generally, to preserve a complaint for appellate review, the party must make the complaint to the trial court by timely request, objection, or motion that states the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, and the trial court must rule on the request, objection, or motion, "either expressly or implicitly." TEX. R. APP. P. 33.1(a). "The right to a trial untainted by improper jury argument is forfeitable." *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018). To preserve a complaint about improper jury argument for appellate review, the defendant must pursue his objection to an adverse ruling from the trial court. *Id.*; *Hinojosa v. State*, 433 S.W.3d 742, 761 (Tex. App.—San Antonio 2014, pet. ref'd). A trial court's ruling on a matter need not be expressly stated if its actions or other statements "otherwise unquestionably indicate a ruling." *Montanez v. State*, 195 S.W.3d 101, 104 (Tex. Crim. App. 2006) (quoting *Rey v. State*, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995)); *Ramirez v. State*, 815 S.W.2d

636, 643 (Tex. Crim. App. 1991) ("[I]t must be clear from the record the trial judge in fact overruled the defendant's objection or otherwise error is waived.").

This Court has previously held that the trial court's statement of "Let's proceed" in response to defense counsel's objection to improper jury argument does not constitute a ruling on the objection and preserves no error for appellate review. *Grayson v. State*, 192 S.W.3d 790, 793 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see also Diamond v. State*, 496 S.W.3d 124, 148 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (holding that trial court's statement of "All right. Ladies and gentlemen, you're going to be the judges of what was presented by the evidence and the testimony" did not constitute ruling on defendant's objection to improper jury argument); *Gonzalez v. State*, 337 S.W.3d 473, 484 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (holding that trial court's statement of "Ladies and gentleman, you are the triers of fact. You are the judges. And . . . you have heard the evidence and you will make your own decision" did not constitute ruling on objection to improper jury argument); *Murillo v. State*, 839 S.W.2d 485, 492–93 (Tex. App.—El Paso 1992, no pet.) (stating, in context of objection to admission of extraneous offense evidence during questioning of witness, that trial court's response of "You may proceed" to objection "was an attempt to ignore or avoid the objection and did not constitute a conclusory or definite ruling adverse to the objection" and therefore no error was preserved for appellate review).

Here, the following occurred during the State's closing argument:

The State: Now, yes, do I wish I had DNA and do I wish I had fingerprints, do I wish I knew who those people were, yes, I do. But that doesn't mean I don't know who that dope belonged to. And let me tell you something. [The address of the house] those pictures were taken by [defense counsel]. If he wanted to go out there and talk to them, he should have knocked on the door. They are there for him to talk to.

Defense counsel: I am going to object, Your Honor. That is shifting the burden.

The Court: Proceed.

The trial court's response, "Proceed," does not constitute a ruling, either express or implicit, on appellant's objection. *See Grayson*, 192 S.W.3d at 793; *see also Montanez*, 195 S.W.3d at 104 (providing that ruling need not be express as long as trial court's actions or other statements "otherwise unquestionably indicate a ruling"). We therefore hold that because appellant did not receive an adverse ruling on his objection to improper jury argument, he has failed to preserve this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a)(2); *Hernandez*, 538 S.W.3d at 622 (stating that, to preserve complaint concerning improper jury argument, defendant must pursue objection to adverse ruling); *Grayson*, 192 S.W.3d at 793 (holding that because trial court did not make ruling on improper jury argument objection when court stated "Let's proceed" in response to objection, defendant preserved nothing for appellate review).

14

*C.* *Analysis*

Even assuming that appellant properly preserved his complaint concerning improper jury argument for appellate review, we conclude that the challenged argument was permissible.

Appellant complains that the State improperly shifted the burden of proof to appellant during closing argument when the prosecutor stated, "If [defense counsel] wanted to go out there and talk to them [the other people at the scene who were not identified in the police investigation], he should have knocked on the door. They are there for him to talk to." Appellant argues that this statement "asked the jury to require counsel for [appellant] to attempt to identify the persons present at the time Appellant was arrested," which is "the heart of shifting the burden from the State to the defense."

The Court of Criminal Appeals has held that, during argument, the prosecutor may permissibly comment on the defendant's failure to produce witnesses and evidence "so long as the remark does not fault the defendant for exercising his right not to testify." *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000); *Hinojosa*, 433 S.W.3d at 762; *Baines v. State*, 401 S.W.3d 104, 108–10 (Tex. App.— Houston [14th Dist.] 2011, no pet.) (holding that prosecutor's statement that defendant "has the same subpoena power" and could have called two witnesses to testify in his defense was permissible comment about defendant's failure to produce

evidence in his favor, did not improperly shift burden to defense, and did not improperly comment on defendant's failure to testify); *Caron v. State*, 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (noting that State may comment on defendant's failure to present evidence in his favor and holding that prosecutor's statement that "[i]f there is something out there that is going to exonerate you, you want to make it known" was proper and did not shift burden of proof). We look at the challenged language from the jury's standpoint and determine whether the prosecutor's comment "was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Hinojosa*, 433 S.W.3d at 762 (quoting *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001)). If the prosecutor's language can be reasonably construed as referring to the defendant's failure to produce testimony or evidence from sources other than himself, reversal is not required. *Id.*

Here, during closing argument, defense counsel repeatedly attacked Sergeant Davidson's investigation, taking issue with, among other things, the fact that Sergeant Davidson did not investigate and identify the other people present at the house where appellant was arrested, which meant that counsel had no way of questioning these individuals himself or inquiring into the backgrounds of these individuals, such as whether they had past convictions for methamphetamine possession, which could have produced favorable evidence for appellant. The State

acknowledged some of the shortcomings in Sergeant's Davidson's investigation, but stated that the defense's theory—that one of the other unidentified individuals at the scene, after seeing Davidson handcuff appellant and place him in his patrol car, ran over to appellant's car and dropped the drugs nearby—was unreasonable. The State then noted that defense counsel had visited the scene and taken pictures of the house, which were admitted into evidence during cross-examination of Sergeant Davidson. The prosecutor stated, "If [defense counsel] wanted to go out there and talk to them [the unidentified people at the scene], he should have knocked on the door. They are there for him to talk to."

This statement by the prosecutor does not remark on appellant's failure to testify at trial. Instead, the State argued that, despite Sergeant Davidson's failure to identify the other people at the scene, defense counsel could have conducted his own investigation by going to the house to see if he could uncover a witness who could provide favorable testimony for appellant. This statement can reasonably be construed as a comment on the defense's failure to produce evidence and testimony arising from a source other than appellant himself, which constitutes permissible jury argument. *See Hinojosa*, 433 S.W.3d at 762 ("Reversal is not required where the language can be reasonably construed as referring to a defendant's failure to produce testimony or evidence from sources other than himself."); *Baines*, 401 S.W.3d at 109 (holding that prosecutor's comment that defendant could have called

17

two witnesses, who defendant argued had actually committed charged offense, to testify to support his defensive theory "went to the credibility of appellant's defense and did not shift the burden of proving the elements of the offense"). We conclude that the prosecutor's statement during argument did not impermissibly shift the State's burden to prove the elements of the charged offense of possession of methamphetamine to the defense. We therefore hold that the trial court did not err by allowing this statement.

We overrule appellant's sole issue.

**Conclusion**

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Landau.

Do not publish. TEX. R. APP. P. 47.2(b).