**Cecilia Rene Sanders JOHNSON,
Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 08–95–00048–CR.**

Court of Appeals of Texas,
El Paso.

June 13, 1996.

John Gates, Asst. City Atty., El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for State.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

LARSEN, Justice.

## OPINION

Appellant, Cecilia Johnson, was tried by a jury and found guilty of murder for the stabbing death of her husband. The court assessed punishment at fifteen years' confinement. In four points of error, Johnson seeks review of the trial court's judgment. We reverse and remand with instructions to enter an order of acquittal.

## FACTS

Cecilia Rene Johnson and James Freddy Johnson had a stormy marital relationship and a history of family violence; the police frequently responded to domestic disturbance calls at their residence. On May 28, 1992, Johnson summoned the police to her residence in response to yet another altercation between her and her husband. During that visit, Johnson asked the officers what rights she would have if she were to kill her husband in self-defense. The officers advised her generally on her self-defense rights but further advised her not to take matters into her own hands.

Three days later, on May 31, 1992, Johnson and her husband became embroiled in another altercation during which Johnson claimed her husband hit her in the face several times. Several police officers testified that Johnson showed no evidence of bruising, swelling, abrasions, or injury. At trial and in a written statement given on the evening of the offense, Johnson stated that she grabbed a kitchen knife during the argument to keep her husband from striking her again. Johnson stabbed her husband twice, once in the arm and once below the left collar bone. James Johnson died of internal bleeding resulting from the stab wound to the left chest which severed the thoracic aorta.

Johnson was arrested on May 31, 1992 and initially indicted for murder. The state dismissed that indictment on the day of trial. The state later re-indicted Johnson for criminally negligent homicide. Again, the state dismissed this second indictment just prior to trial. The state then indicted Johnson a third time, again for murder. Johnson was ultimately tried beginning January 23, 1995. At trial, Johnson testified that she did not intend to kill the deceased but stabbed him in self-defense. An expert testified that Johnson was in an abusive relationship with her husband and was simply defending herself. Johnson now appeals her conviction in four points of error.

### Speedy Trial

In her first point of error, Johnson contends that the trial court erred by denying her motion to dismiss for lack of a speedy

trial. At the hearing on her motion to dismiss, the parties stipulated the following facts. Johnson was arrested on May 31, 1992 for the killing of her husband, James Johnson. An indictment for murder was returned against her on August 13, 1992. The case was first set for jury trial on June 15, 1993. Both sides appeared but prior to the selection of the jury, the state moved to dismiss the indictment. On an unspecified later date, Johnson was charged by information with the misdemeanor offense of criminally negligent homicide. Trial was set for August 2, 1994. On July 28, 1994, however, Johnson was reindicted for murder and on July 31, 1994, defense counsel was notified that the state was dismissing the misdemeanor case. Trial on the murder charge finally commenced on January 23, 1995, two and one-half years after Johnson's initial arrest.

▬ Whether a defendant has been denied the right to a speedy trial is analyzed under the four-part balancing test established in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 116–17 (1972). Specifically, *Barker* requires the reviewing court to consider: (1) length of delay; (2) reason for the delay; (3) assertion of the right to a speedy trial; and (4) resulting prejudice to the accused. *Id.* No one factor alone is a necessary or sufficient condition to finding a deprivation of the right to a speedy trial. *Ramirez v. State,* 897 S.W.2d 428, 431 (Tex.App.—El Paso 1995, no pet.).

### Length of Delay

▬ The length of delay is measured from the time the defendant is arrested or formally accused. *Ramirez,* 897 S.W.2d at 432. The length of delay is a triggering mechanism; there must be enough of a delay to be presumptively prejudicial before the other factors need be considered. *Id.* In this case, as the state concedes, a delay of some thirty-two months from Johnson's arrest to the commencement of her trial is presumptively prejudicial and warrants consideration of the remaining factors. *See State v. Empak, Inc.,* 889 S.W.2d 618, 623 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd)(noting most delays of eight months or longer are considered presumptively unreasonable and

prejudicial). This factor weighs in favor of Johnson.

### Reason for Delay

▬ The state has the initial burden of justifying a lengthy delay. *Emery v. State,* 881 S.W.2d 702, 708 (Tex.Crim.App.1994). Where the record is silent or contains reasons insufficient to excuse the delay, it must be presumed that no valid reason for delay existed. *Turner v. State,* 545 S.W.2d 133, 137–38 (Tex.Crim.App.1976). In examining the reasons for the delay, a deliberate attempt to delay trial to hamper the defense is weighed heavily against the state. *Emery,* 881 S.W.2d at 708. A more neutral reason, such as negligence or overcrowded courts, should be weighed less heavily, but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the state rather than with the defendant. *Id.; Ramirez,* 897 S.W.2d at 432. An accused may relinquish her right to the speedy trial safeguard when she shares the responsibility for the delay. *Love v. State,* 909 S.W.2d 930, 947 (Tex.App.—El Paso 1995, pet. ref'd). The accused cannot sustain a claim for speedy trial in situations where the delay is a result of evading arrest, making dilatory motions, failing to object to a continuance granted to the state, or incompetence to stand trial. *Id.*

▬ The state presented no evidence explaining the delay in bringing Johnson to trial, a practice we strongly disapprove of as the state bears the burden of making a viable explanation. Nonetheless, a direct explanation of the delay is not always required. *Ramirez,* 897 S.W.2d at 432. The state meets its burden of providing a reason for the delay if the record reflects sufficient reason. *Id.* On appeal, the state attributes the delay to the prosecutor's decision to reindict Johnson following the discovery of new evidence. This "new evidence" was grand jury testimony by Officer Morris Williams. He apparently told the grand jury that he was the supervisor responding to the call following the stabbing of Johnson's husband and made no written statement for the case file; he was previously acquainted with Johnson and her husband, and went to see John-

son when he arrived at the scene. Johnson made inculpatory statements to him at the scene of the crime suggesting she intended to kill her husband.

Citing *Archie v. State*, 511 S.W.2d 942 (Tex.Crim.App.1974), the state argues that reindictment and further investigation are valid reasons explaining delay for speedy trial purposes. In *Archie*, the defendant was twice re-indicted, resulting in a three-year delay from arrest to trial. The Court noted an absence of evidence indicating a deliberate effort by the state to delay the trial. The Court further noted the defendant made no complaint about the delay or reindictments. In analyzing the four factors, the Court found that the defendant failed to assert his right to a speedy trial and showed no prejudice resulting from the delay. The Court ultimately concluded that the defendant had not been denied a speedy trial.

Here, in contrast, the state established a pattern of dismissing two indictments on the eve of trial, which we find is some indication of an effort to delay trial. The state argues that discovery of new evidence compelled the second dismissal. We do not think this evidence can fairly be characterized as "newly discovered." Williams, an agent of the state, knew of Johnson's statements from the day of the offense, and testified to it before the grand jury, presumably in the presence of a prosecutor. Even if the case file contained no statement from Williams, with reasonable diligence the state should have timely discovered this testimony. *See Lyon v. State*, 885 S.W.2d 506, 519 (Tex.App.—El Paso 1994, pet. ref'd)(ruling documents in possession of defense prior to trial are not newly-discovered evidence). Although this delay does not appear to stem from a deliberate attempt to hamper the defense, for speedy trial purposes it must nevertheless be weighed heavily against the state.

The state also asserts in its brief that because Johnson sought a continuance of the first trial setting, she must share in the blame for the delay in her trial. At the hearing on the motion to dismiss, Johnson's counsel conceded that he moved for continuance on April 26, 1993 to allow Johnson an opportunity to meet with a court-appointed psychologist. No order or other indication in the record, however, shows that a continuance was granted. Without more to support it, we cannot give weight to the state's claim that Johnson's request for continuance caused the delay. *See Jaile v. State*, 836 S.W.2d 680, 686 (Tex.App.—El Paso 1992, no pet.)(finding no merit to defendant's claim that delay was intentionally caused by state's request for continuance where record did not reflect continuance was granted). Moreover, even were we to assume the first trial was delayed by Johnson's request for continuance, that delay was at most seven weeks, the time that elapsed between the filing of the motion and the first trial setting of June 15, 1993. We find the second *Barker v. Wingo* factor weighs heavily against the state.

### Assertion of the Right

Johnson filed a motion to dismiss for denial of a speedy trial twenty days before trial. The record contains no evidence that Johnson otherwise objected to the delay or asserted her right, despite her case having thrice been set for trial. The failure to invoke the right earlier does not amount to waiver, but because Johnson did not persistently assert her right to a speedy trial, we do not weigh this factor heavily in her favor. *See Ramirez*, 897 S.W.2d at 433. In assessing this factor, however, we bear in mind that speedy trial is not an individual right of the defendant alone, but is also a right possessed by society as a whole. We must give deference to the "social interests in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *See Ramirez*, 897 S.W.2d at 437 (J. Chew, dissenting), *quoting Barker v. Wingo*, 407 U.S. at 519, 92 S.Ct. at 2186, 33 L.Ed.2d at 110–11. The accused has a right to speedy trial, but so does the community; the community's interest is not dependent upon an assertion of the right by a defendant. For that reason, we do not necessarily weigh this factor in favor of the state, even where defendant has not stridently and repeatedly asserted her individual right to speedy trial.

### Prejudice to Accused

Finally, we must determine whether Johnson suffered prejudice as a re-

sult of the delay. Although a showing of actual prejudice is not required, it is the defendant's burden to make some showing of prejudice. *Ramirez*, 897 S.W.2d at 433. Prejudice must be assessed in light of the interests of defendants which the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize the anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Harris v. State*, 827 S.W.2d 949, 957 (Tex.Crim.App.1992).

At the hearing on the motion to dismiss, Johnson testified that the delay in being brought to trial caused her emotional and psychological problems. Believing the case had been dismissed, she tried to put it behind her and get on with her life. She was upset to learn that the case was not over. The record contains evidence that the delay caused Johnson anxiety and concern.

 Weighing more heavily in her favor, Johnson also claims to have lost the testimony of several witnesses. When basing a claim of prejudice on non-availability of a witness, appellant must show: (1) the witness was unavailable at the time of trial; (2) the testimony that would have been offered was relevant and material to the defense; and (3) due diligence was exercised in an attempt to locate the witness for trial. *Swisher v. State*, 544 S.W.2d 379, 382 (Tex.Crim.App.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977); *McCarty v. State*, 498 S.W.2d 212 (Tex.Crim.App.1973).

Johnson claims that Curtis Scholet, Clinton Sanders, Tanya Ford, and Henry McCrory were no longer available to testify. The record does not support the claim that Scholet and Sanders were unavailable. To the contrary, Johnson testified that Scholet and Sanders were both in the El Paso County Jail. Johnson also testified that Tanya Ford lived in Albuquerque, New Mexico, and that Ford would testify about acts of violence by the deceased toward Johnson, but that Ford could not attend the trial because of work and transportation problems. Johnson equivocated, testifying that she was unsure whether Ford would be able to make it to trial or not. Johnson further testified that she lost the testimony of McCrory, a friend of the deceased, who would have testified about the deceased's violent behavior. She had not been in contact with McCrory for several months and did not know where he was. Johnson testified that she had tried to contact him but he did not have the same number, and she did not now know how to get in touch with him. Finally, Johnson asserts that her own ability to participate in trial was hampered by the delay. She testified that she believed her memory would have been better had she gone to trial earlier. Having presented some evidence on two of the three criteria for assessing prejudice, we should find that Johnson presented sufficient evidence to establish some prejudice. This factor weighs in Johnson's favor.

 After balancing the four *Barker v. Wingo* factors, we conclude that Johnson was denied her right to a speedy trial. A thirty-two month delay, a showing of some prejudice, and dismissal of two previous indictments on the eve of trial without viable explanation, show that the state did not act with reasonable diligence in bringing Johnson's case to trial. Point of Error One is sustained.

### CONCLUSION

The cause is reversed and remanded to the trial court with instructions to enter an order of acquittal.