**Cecilia Rene Sanders JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–95–00048–CR.**

Court of Appeals of Texas, El Paso.

June 11, 1998.

Rehearing Overruled Sept. 9, 1998.

---

6. Act of May 13, 1977, 65th Leg., R.S., ch. 280, § 1, 1977 Tex. Gen. Laws 748 (emphasis added).

John Gates, Assistant City Attorney, El Paso, John S. Fischer, Huntsville, for Appellant.

Jaime E. Esparza, District Attorney, El Paso, for State.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

Cecilia Rene Johnson appeals her conviction for murder.[1] Upon the jury's finding of guilt, the trial court assessed punishment at imprisonment in the Institutional Division of the Texas Department of Criminal Justice for a term of fifteen years. We affirm.

## SCOPE OF REVIEW ON REMAND

On original submission, a panel of this Court reversed Appellant's conviction because of a denial of her right to a speedy trial. *Johnson v. State*, 925 S.W.2d 350 (Tex. App.—El Paso 1996). Inherent in the decision was the recognition of a community right to a speedy trial. As a result of the

---

1. A complete factual development is found in *Johnson v. State*, 925 S.W.2d 350 (Tex.App.—El Paso 1996). We will not repeat it here.

disposition, Appellant's other points of error were not reached. Declaring that there is no community *right* to a speedy trial and that any community *interest* is already encompassed within the *Barker v. Wingo* balancing test, the Court of Criminal Appeals reversed and remanded the cause to us. *Johnson v. State,* 954 S.W.2d 770 (Tex.Crim.App.1997), *citing Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 116–17 (1972).

■ The Rules of Appellate Procedure do not specifically address procedures in the courts of appeals after remand by the Court of Criminal Appeals. Not surprisingly, Appellant and the State disagree as to the scope of our review. Appellant contends that we may only revisit the third prong of the *Barker v. Wingo* test concerning her assertion of the right to a speedy trial; she maintains that we may not revisit the other three factors which the original panel weighed in her favor. The State argues that because the Court of Criminal Appeals reversed and remanded for us "to analyze appellant's speedy trial claim in a manner consistent with this opinion," we must reconsider all of the *Barker v. Wingo* factors. *Johnson,* 954 S.W.2d at 774. The State also points to the fact that the Court dismissed without prejudice the State's fourth ground of error, which inquired: "Did the El Paso Court of Appeals consider all relevant evidence in the record and afford proper deference to the trial court as primary fact finder in holding that appellant's constitutional right to a speedy trial was violated?" In footnote six, the Court responded:

> Because the Court of Appeals' application of the balancing test itself is flawed, and we reverse, in part on that basis, we feel that addressing the State's fourth ground of error would be premature.

*Id.* at n. 6.

In the absence of a precise directive, the scope of our review upon remand is rather broad. We begin our analysis with a discussion of *Garrett v. State,* 749 S.W.2d 784 (Tex. Crim.App.1986). Following a jury verdict finding Garrett guilty of murder, the court of appeals reversed on the basis of unassigned fundamental error in the jury charge. Find-

ing that the charge error did not constitute fundamental error, the Court of Criminal Appeals reversed and remanded to the court of appeals "for consideration of appellant's (assigned) grounds of error." *Garrett,* 749 S.W.2d at 786. Garrett filed a motion for rehearing, alleging for the first time insufficiency of the evidence. The motion was denied. After remand, Garrett filed an amended brief in the court of appeals urging that the evidence was insufficient to support the guilty verdict. The court of appeals agreed, again reversed and remanded to the trial court for entry of an order of acquittal. On petition for discretionary review, the State complained that the court of appeals was without jurisdiction to entertain an amended or supplemental brief raising grounds of error not contemplated under the higher court's remand order. The Court of Criminal Appeals disagreed:

> [W]here a court of appeals renders a decision that reverses judgment of conviction without ruling on all grounds of error raised on appeal, and on discretionary review this Court determines that the reason for that decision is erroneous and reverses the judgment of the court of appeals, we have removed as a bar whatever error led the court below to pretermit determination of other matters within its jurisdiction, power and authority on direct appeal. There is nothing left for this Court to review, and if the court of appeals is to exercise its direct appeal jurisdiction the only proper disposition of the cause by this Court is to remand it to the court of appeals for that purpose.

> . . .

> When jurisdiction over the cause is restored by remand neither statutes nor scanty prior decisions cited above dictate that the court of appeals is limited in its renewed appellate consideration of the cause to the terms of our order of remand.

*Garrett,* 749 S.W.2d at 786–87.

A similar result occurred in *Adkins v. State,* 764 S.W.2d 782 (Tex.Crim.App.1988). There, the court of appeals reversed the conviction because the trial court erred in

failing to suppress evidence seized under an invalid warrant. The Court of Criminal Appeals vacated the judgment and remanded for a determination as to whether there were exigent circumstances to support the warrantless arrest. On remand, the court of appeals found no exigent circumstances but upheld the arrest warrant on other grounds. Discretionary review was again granted, this time to determine whether the intermediate court erred in not limiting review to the question on remand. In affirming, the high court noted that upon remand the exercise of the reviewing function of an intermediate appellate court is limited only by its own discretion or a valid restrictive statute. *Adkins*, 764 S.W.2d at 784, *citing Carter v. State*, 656 S.W.2d 468 (Tex.Crim.App.1983). Further, upon remand to a lower court, "the jurisdiction originally granted to the court by constitutional and statutory mandate is fully restored by the order of abatement and remand." *Adkins*, 764 S.W.2d at 784.

This broad brush of remand review was narrowed somewhat in *Williams v. State*, 829 S.W.2d 216 (Tex.Crim.App.1992). The jury found the defendant guilty of capital murder; the Waco Court of Appeals affirmed. On petition for discretionary review, the Court of Criminal Appeals reviewed the defendant's claim that an out-of-court declaration by an accomplice was inadmissible because it failed to comply with the co-conspirator's exception to the hearsay rule. The court reversed and remanded to the court of appeals with the following directive:

> In the instant cause the Court of Appeals has yet to decide whether the statement in issue was made 'in furtherance of' what appellant concedes was an ongoing conspiracy. We therefore remand this cause to that court for reconsideration of appellant's first point of error.

Upon remand, the intermediate court determined that the statements were not made in furtherance of the conspiracy and were not admissible under TEX.R.EVID. 801(e)(2)(E), but nevertheless found the statements admissible under the exception to the hearsay rule allowing admission of statements against interest. The Court of Criminal Appeals again granted the petition for review, finding that

"the Court of Appeals' reasoning in its opinion exceeded the scope of this Court's remand order. We also find that the Court of Appeals erred in not fully complying with this Court's remand order." The Court emphasized that whether the statement was admissible or inadmissible under TEX.R.EVID. 803(24) was never briefed, argued, or raised on appeal by either side.

> Under our remand order, the question of whether the statement was admissible under Rule 803(24) was not properly before the Court of Appeals. The Court of Appeals' endeavor to analyze the admissibility of this statement in the context of Rule 803(24) stepped outside the scope of this Court's remand order. In light of this, we disavow the reasoning of the Court of Appeals on the issue of the admissibility of the accomplice's statement under Rule 803(24), and reverse their decision.

*Williams*, 829 S.W.2d at 217. Accordingly, the cause was remanded for a harm analysis under former TEX.R.APP.P. 81(b)(2).

Most recently, the scope of remand was considered by the Waco Court of Appeals in *Calhoun v. State*, 951 S.W.2d 803 (Tex. App.—Waco 1997, pet. ref'd.). The defendant's convictions were originally affirmed by that Court. *Id.* The Court of Criminal Appeals granted the petition for discretionary review and reversed and remanded to the Waco Court for the specific purpose of reconsidering the merits of two points of error which had challenged the sufficiency of the evidence to support the convictions and which the intermediate court had found to be waived. On remand, the defendant filed an amended brief complaining that the court of appeals had applied an improper standard in determining in its initial opinion that charge error had been waived. The Court then addressed whether this complaint, not being one of the specific points mentioned in the directive on remand, was appropriate for consideration. It concluded:

> [T]he appellate court is vested with the jurisdiction to address not only the specific points which were the subject of the remand, but also to reconsider points of error in its earlier decision which the Court of Criminal Appeals refused to review.

Distinguishing the facts of this case from *Williams v. State,* the Court continued:

> [W]e feel compelled to exercise our jurisdiction in reviewing the merits of Calhoun's first point of error. Our reconsideration of Calhoun's first point of error does not conflict with *Williams v. State,* in which the Court of Criminal Appeals found that we had exceeded the scope of remand by deciding the case on 'a matter, not argued, not briefed, and not raised on appeal by either side.' 829 S.W.2d 216, 217 (Tex.Crim.App.1992). In the instant case, Calhoun has merely continued to assert his first point of error throughout the appellate process and the State has had the opportunity to respond to this point.

*Calhoun,* 951 S.W.2d at 806–07.

With these guidelines in mind, we first look to the directive of the Court of Criminal Appeals in remanding the case for our reconsideration: "We reverse and remand this cause to the Court of Appeals in order to analyze appellant's speedy trial claim in a manner consistent with this opinion." *Johnson,* 954 S.W.2d at 774. We further note that the Court concluded that this Court's application of the balancing test itself was flawed. *Id.* at n. 6. In considering a speedy trial claim, a reviewing court must balance four factors. *Johnson,* 954 S.W.2d at 772, *citing Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 116–17. If we are to appropriately consider the contention, we must not only review the third prong to weigh the competing considerations, but we must also balance it against the other factors. Indeed, none of the four factors is a necessary or sufficient condition to the finding of a speedy trial violation. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker,* 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118–19. Because the State and Appellant have briefed the issue both on original submission and on remand, we' thus proceed to evaluate all four factors in addressing the speedy trial claim.

## SPEEDY TRIAL CLAIM

In her first point of error, Appellant contends that the trial court erred in refusing to dismiss the indictment for lack of a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution as applied through the Fourteenth Amendment, as well as Article I, section 10 of the Texas Constitution.

### *Standard of Review*

Whether a defendant has been denied the right to a speedy trial is analyzed under the four-part balancing test established in *Barker.* Specifically, *Barker* requires the reviewing court to consider: (1) length of delay; (2) reason for the delay; (3) assertion of the right to a speedy trial; and (4) resulting prejudice to the accused. *Id.* No one factor alone is a necessary or sufficient condition to finding a deprivation of the right to a speedy trial. *Ramirez v. State,* 897 S.W.2d 428, 431 (Tex.App.—El Paso 1995, no pet.). Review of these individual factors necessarily involves fact determinations and legal conclusions. *Johnson,* 954 S.W.2d at 771. The balancing test as a whole, however, is a purely legal question. *Id.* Legal questions are reviewed *de novo. Id.* Therefore, we, as the reviewing court, must conduct a *de novo* review of Appellant's speedy trial claim. *Id.*

### *Length of Delay*

The defendant has the burden of first demonstrating that sufficient delay has occurred to require application of the *Barker v. Wingo* balancing test. *Lott v. State,* 951 S.W.2d 489, 493 (Tex.App.—El Paso 1997, pet. ref'd ), *citing Ramirez v. State,* 897 S.W.2d 428, 431 (Tex.App.—El Paso 1995, no pet.); *State v. Hernandez,* 830 S.W.2d 631, 635 (Tex.App.—San Antonio 1992, no pet.). The length of the delay is measured from the time the defendant is arrested or formally accused. *Harris v. State,* 827 S.W.2d 949, 956 (Tex.Crim.App.1992), *citing United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). To some extent, this factor is a triggering mechanism, so that a speedy trial claim will not be heard until passage of a period of time that is *prima facie* unreasonable. *Harris,* 827 S.W.2d at 956, *citing Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. at 2192. There must be

enough of a delay to be presumptively prejudicial to the defendant before it becomes necessary to consider the other three factors in the *Barker* analysis. *Emery v. State,* 881 S.W.2d 702, 708 (Tex.Crim.App.1994); *Lazcano v. State,* 836 S.W.2d 654, 657 (Tex. App.—El Paso 1992, pet. ref'd). Although the cases seem to use the phrases "presumptively unreasonable" and "presumptively prejudicial" interchangeably, the Supreme Court's opinion in *Barker* contains the "prejudicial" language: "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. Indeed, the Court of Criminal Appeals noted in *Harris*that courts generally hold that any delay of eight months or longer is presumptively unreasonable and triggers the speedy trial analysis. *Harris,* 827 S.W.2d at 949, *citing* 2 LeFave & Israel, *Criminal Procedure* § 18.2(b)(1984). We interpret this language as creating a rebuttable presumption.

■ Appellant was arrested at the time of the murder on May 31, 1992. Her trial on the murder charge began on January 23, 1995. A delay of thirty-two months between the date of her arrest and trial is sufficient to trigger our review of the remaining factors. In other words, we now look to the remaining factors to determine whether the State has rebutted the presumption of prejudice.

### Reason for the Delay

■ The State has the initial burden of justifying a lengthy delay. *Lott,* 951 S.W.2d at 493; *Emery,* 881 S.W.2d at 708; *Turner v. State,* 545 S.W.2d 133, 137–38 (Tex.Crim.App. 1976). In light of a silent record or one containing reasons insufficient to excuse the delay, it must be presumed that no valid reason existed. *Lott,* 951 S.W.2d at 493. We emphasize here that we review the entire record to determine whether the State has rebutted this presumption. While the State presented no evidence at the dismissal hearing explaining their delay, a direct explanation is not always required although it may be the better practice to do so. *Ramirez,*

897 S.W.2d at 432. In examining the delay, different weights should be assigned to different reasons. *Emery,* 881 S.W.2d at 708. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the State. *Id.* Courts should weigh neutral reasons, such as negligence or overcrowded dockets, less heavily but they should nevertheless be considered since the ultimate responsibility for such circumstances rests with the State rather than with the defendant. *Id.*

■ Appellant was arrested for the murder of her common-law husband on May 31, 1992, and an indictment was returned on August 13, 1992. On April 26, 1993, six weeks before trial was scheduled to begin, Appellant moved for a continuance in order to seek psychological help.[2] On the morning the case was set for trial, the State moved to dismiss. Appellant was charged with criminally negligent homicide and the trial was rescheduled for August 2, 1994. Two days prior to that setting, the State again dismissed the case. Appellant was then reindicted on a charge of murder. On January 3, 1995, Appellant filed a motion to dismiss for lack of a speedy trial. In response, the State claimed that it was reindicting on the murder charge due to newly discovered evidence from Officer Morris Williams. As a result, the prosecuting attorney felt compelled to submit the case to the grand jury, which returned the two-count murder indictment. This case finally proceeded to trial on January 23, 1995.

If the record reflects sufficient reasons for the delay, the State has met its burden. *Ramirez,* 897 S.W.2d at 432. The record before us reflects that the State's reason was newly discovered evidence. In the prior opinion in this cause, the panel determined that the evidence could not "fairly be characterized as 'newly discovered.'" We note that Appellant did not undertake to challenge the characterization of Williams' testimony as newly discovered, either in response to the State's written contentions in the trial court or in the initial briefing in this Court. In-

---

**2.** Although the record does not contain an order of continuance, it does appear that a brief continuance was granted. Appellant has not disputed that fact.

deed, during trial, the defense conceded that the information had just been discovered by the State "a few days ago and it's been a surprise." Officer Williams, in his capacity as a supervisor, was dispatched to the scene on May 31, 1992. He indicated that a supervisor is usually dispatched for the purpose of preserving the crime scene when there is a possibility that a homicide occurred. As is the common practice for a supervisor, Williams did not prepare a written report concerning the events he observed at the scene. During trial, Williams testified that he had answered several domestic violence calls at Appellant's address and it appeared to him that Appellant had been the aggressor. Williams also testified that on the night of the murder, he arrived at the scene and Appellant volunteered a statement to the effect that she had stabbed the decedent because he was trying to have a physical relationship with her cousin. Williams testified that he had only provided this information to the State during "pretrialing" at the district attorney's office shortly before the August 2, 1994 trial setting and that he was then quickly called to provide the information to the grand jury. Upon review, we are of the belief that the stated reason was sufficient to meet the State's initial burden to justify the delay and therefore qualifies as a more neutral reason. Thus, we do not weigh this factor heavily against the State. Nevertheless, although the State has met its burden by establishing a more neutral reason, any delay must weigh at least partially against it since the ultimate responsibility for even neutral reasons rests with the State. *Emery*, 881 S.W.2d at 708, *citing Barker v. Wingo*, 407 U.S. at 531, 92 S.Ct. at 2192. However, Appellant must also share part of the blame for the delay since she moved for and received a continuance of the original trial setting. She also failed to object to the State's dismissal and reindictment of the charges until less than one month before trial. Therefore, we conclude that the delay should be attributed both to the State and to Appellant.

### Assertion of the Right to a Speedy Trial

 In its original opinion, the panel determined that Appellant failed to assert persistently her right to a speedy trial, but did not weigh this factor against her. Rather, it implicitly counterbalanced her failure to assert with the community's right to a speedy trial. The Court of Criminal Appeals determined that while a community *interest* in a speedy trial exists, there is no community *right* to a speedy trial. *Johnson*, 954 S.W.2d at 772. "The four *Barker* balancing factors are in place to ensure that an individual defendant's Sixth Amendment right to a speedy trial is not violated. There is no equivalent community right." *Id.*

We must now analyze the third *Barker* prong, the assertion of the right to a speedy trial, without considering a community right in the balancing test. This Court previously found that although Appellant filed a motion to dismiss for denial of a speedy trial twenty days before trial, the record contained no evidence that she otherwise objected to the delay or asserted her right, despite her case having been set for trial on three occasions. *Johnson*, 925 S.W.2d at 354. The failure to invoke the right earlier does not amount to waiver, but because Appellant did not persistently assert her right to a speedy trial, we did not weigh this factor heavily in her favor. *Id.* Even without considering a community interest, we find that this factor remains weighted in her favor, although not heavily so.

### Prejudice

 Finally, we must determine whether Appellant suffered prejudice as a result of the delay. Although a showing of actual prejudice is not required, it is the defendant's burden to make a showing of prejudice. *Ramirez*, 897 S.W.2d at 433; *Oliver v. State*, 731 S.W.2d 149, 159–60 (Tex. App.—Fort Worth 1987, pet. ref'd). A mere passage of time is not prejudicial and will not result in a denial of speedy trial. *Ramirez*, 897 S.W.2d at 433; *Oliver*, 731 S.W.2d at 160. Prejudice must be assessed in light of the interests of defendants which the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Harris v. State*, 827

S.W.2d 949, 957 (Tex.Crim.App.1992). Appellant did not suffer oppressive pretrial incarceration because she was not imprisoned pending trial. With regard to the undue anxiety factor, Appellant testified that she experienced psychological and emotional problems because she was trying to go on with her life and put this incident behind her. Although she was experiencing these problems, she was no longer seeking psychological treatment. Her testimony does not evidence any undue anxiety or unusual concern.

Appellant also contended that the delay hampered her defense due to missing witnesses. Two of Appellant's witnesses were not missing; they were in jail across the street from the El Paso County Courthouse. A third witness, Appellant's sister, was living in Albuquerque. Appellant testified that although she had not made any attempt to bring her sister to El Paso, "from the way she sounds, she can't get away." The final missing witness was Henry McCrory, a friend of the deceased, who would have testified to the behavior of the deceased. Appellant claimed that she did not know how to reach McCrory, but that she had not attempted to locate him. When non-availability of witnesses is the basis of the alleged prejudice, an appellant must demonstrate that the witnesses were unavailable at the time she was tried, that their testimony may be relevant and material to her defense, and that due diligence was exercised in an attempt to locate such witnesses at the time she was tried. *McCarty v. State,* 498 S.W.2d 212, 218 (Tex.Crim.App.1973). Because Appellant has failed to show that the first three missing witnesses were unavailable or that she exercised due diligence in locating the fourth, she has failed to make the requisite showing of prejudice.

Considering all the factors and applying the appropriate balancing test, we find no denial of Appellant's right to a speedy trial. Because this Court's initial opinion in this cause did not address the remainder of Appellant's points of error in light of its disposition of the speedy trial claim, we now turn to those issues.

## EXTRANEOUS OFFENSES

◼ Appellant next asserts that the trial court erred in admitting evidence of an extraneous act. Officer Williams described his response to a family violence call at the home of Appellant and the deceased:

Q. Once you arrived there at the Dalhart address, was the defendant there?

A. Yes, she was.

Q. Was [the deceased] there?

A. I believe so.

Q. And were they fighting?

A. On that particular—on July 4th, it was kind of—like I say, all the families were involved. True, it was her brothers involved, [sic] but however, you know, I don't know which side she was taking that particular day, but she was very upset. Had been drinking and there was just a family fight there, so although it was those two involved directly as far as the smashing and breaking of the windows, the entire family was involved because she had certain parties taking different sides of the brothers.

Q. And that included [the deceased]?

A. Yes.

Q. Okay. As a result of that family disturbance, did you arrest anybody?

A. Yes, I did.

Q. And who did you arrest?

A. Cecilia Johnson.

Q. Is that the only arrest you made?

A. On that particular date that I recall, yes.

Q. And why did you arrest her?

A. Public intoxication.

At this point, Appellant objected on the grounds that it was an extraneous matter and that it was offered solely to prejudice the jury against her. The objection was overruled.

Q. Okay. And you arrested Ms. Johnson—Mrs. Johnson?

A. Yes, sir, I did.

Q. Okay. And was she under the influence of alcohol at that time?

. . .

A. On this particular date, like I said, she was very intoxicated. She had the bloodshot eyes. Smell of an alcoholic odor on her—about her person. She was being extremely obnoxious. It was right there in the middle of the— in the front yard which carried on to the sidewalk. I specifically remembered stating to her to calm down. . . . On that particular date, she was causing a big scene. People were coming out of their homes. We were in a public place, so I placed her under arrest.

The State then proceeded to introduce a photograph of Appellant taken on the date she was arrested. Appellant objected, but the trial court noted that the photograph had already been admitted into evidence.

Diedra Scholet, Appellant's niece, testified that she had seen the deceased hit Appellant:

Q. You said you saw [him] hit [Appellant], correct?

A. Yes, sir.

Q. You have also seen [Appellant] hit [the deceased], correct?

A. Yes, sir.

Q. As a matter of fact, you have seen [Appellant] hit lots of people, correct?

A. Yes, sir.

Q. It's just not [the deceased] that she was beating up on, correct?

A. Well, if somebody hits me, I'll hit them back, too.

Q. But, she hit other people, too, that weren't beating up on her.

Appellant then unsuccessfully objected on the grounds that the questioning went beyond her relationship with the deceased.

Q. You have seen her hit lots of other people, correct?

A. I have seen her hit my aunt when we get in fights.

Outside the presence of the jury, the trial court then ruled that it would not allow any further questioning along the lines the State was pursuing.

The State also questioned Appellant regarding her proclivity for hitting people.

Q. You have hit people?

A. Yes, I have. When I have had to defend myself as well.

Q. You heard the police officers say, on several occasions, they determined you were the aggressor?

A. I have heard them say that, but I don't know how they could feel that way.

. . .

Q. Well, isn't it true that whenever you attacked someone, they didn't call or press charges?

A. I don't know if they did. I haven't had to go to Court for anything like that.

Q. You're telling this jury that you never were the aggressor?

A. In a fight?

Q. Yeah.

A. Yeah. When I was back in high school.

Q. Even in your later years.

Appellant then objected that the questioning had nothing to do with her relationship with the deceased, and the objection was sustained.

Appellant complains that the admission of the testimony regarding her arrest for public intoxication and her assaults on other persons was error. To preserve error for appellate review, the complaining party must make a timely, specific objection. *Lozano v. State,* 958 S.W.2d 925, 930 (Tex.App.—El Paso 1997, no pet.), *citing Turner v. State,* 805 S.W.2d 423, 431 (Tex.Crim.App.1991), *cert. denied,* 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). In order to be timely, an objection must be lodged as soon as the objectionable nature of the testimony became apparent. *Murillo v. State,* 839 S.W.2d 485, 493 (Tex.App.—El Paso 1992, no pet.). As soon as Officer Williams was asked if anyone had been arrested, the objectionable nature of the testimony became apparent and Appellant should have objected. Failure to object at the earliest opportunity constitutes waiver. *Id.* Appellant did not object until after Officer Williams testified that he had arrested

Cecilia Johnson, that she was the only individual he had arrested, and that he had arrested her for public intoxication. Even after Appellant objected and the objection was ruled upon, Officer Williams was asked again about Appellant's arrest for public intoxication. Since Appellant also failed to object to this subsequent testimony, any error has been waived.

As to Appellant's assaults on other people, Scholet admitted that she had seen Appellant hit "lots of people." Appellant failed to object to this line of questioning until two more questions had been asked and answered. Appellant herself testified that she had hit other people. No objection was made to this line of questioning until several questions had been asked and answered. Her objections were untimely and any error was waived. Point of Error No. Two is overruled.

## INTERPRETATION OF TESTIMONY

■ In her third point of error, Appellant claims that the trial court erred in allowing a witness to speculate as to her mental condition or motive. During direct examination, Officer Williams testified that when he arrived at the scene, Appellant told him that she was tired of the deceased "trying to talk to Diedra." Williams then replied, "Well, you didn't have to kill him." Officer Williams testified that he believed Appellant spoke freely with him because they had both grown up in the northeast area of El Paso and knew each other.

Officer Williams was then questioned about the meaning of Appellant's statement. Appellant objected on the grounds of speculation, but it was overruled. Officer Williams then explained:

A. Okay. Being of the Afro–American culture, if you're going to tell someone—they won't say—anyone black is not going to say—I am trying to—I'm looking for the correct terminology that another person would use. It's kind of slang. When you say you're trying to talk to somebody, you're referring to you would like to get with them. Kind of a flirting way. I don't know how you would say it. It's pret-

ty much a slang, so when she told me, 'I'm tired of him trying to talk to her,' I knew what she meant. That [the deceased]—I don't know if they were having an affair before or whatever, but he was trying to talk to her.

Appellant asserts that Officer Williams' testimony was speculative and inadmissible. Pursuant to TEX.R.EVID. 701, a lay witness may give his opinion if it is limited to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue.

The record shows that Appellant, the deceased, and Officer Williams are all Afro–Americans.

Under Rule 701, it was permissible for Officer Williams to interpret the ethnic slang for the jury. *See Austin v. State,* 794 S.W.2d 408, 409–11 (Tex.App.—Austin 1990, pet. ref'd)(testimony by vice officer that advertisement in massage parlor for "Swedish Deep Muscle Rub" was catch phrase for prostitution held admissible under Rules 701 and 702 of the Rules of Criminal Evidence); *Revada v. State,* 761 S.W.2d 426, 431 (Tex. App.—Houston [14th Dist.] 1988, no pet.)(testimony of narcotics officer that "set man" meant dealer in pentazocine held admissible to allow the jury to understand the facts and circumstances surrounding the commission of the offense). Point of Error No. Three is overruled.

## HEARSAY STATEMENTS
## OF DECEASED

■ In her final point of error, Appellant argues that the trial court erred in excluding hearsay statements of the deceased, contending that the excited utterance exception applied. Appellant was attempting to establish the violent character of the deceased through the testimony of Diedra Scholet. Scholet testified about an incident in which the deceased ran his vehicle into a wall. Scholet, her aunt, Appellant, and a fourth person were in a club when the deceased arrived and began arguing with Appellant. The deceased left the club only to return approximately twenty minutes later.

At this point in her testimony, Scholet attempted to relate what the deceased said when he returned. The State objected on the grounds of hearsay. Before the trial court ruled on the objection, Appellant elicited from Scholet that the deceased was in a "highly-agitated state," "was talking about killing himself," was intoxicated and upset. Appellant argued that the hearsay statements should be allowed under the excited utterance exception.

An excited utterance is a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. TEX.R.EVID. 803(2). The determination of admissibility of an excited utterance is within the sound discretion of the trial court and will not be reversed on appeal unless a clear abuse of discretion is shown. *Rodriguez v. State*, 903 S.W.2d 405, 409 (Tex.App.—Texarkana 1995, pet. ref'd). If the court excludes evidence offered by the defendant, it is usually necessary to make an offer of proof to preserve any error in refusing to admit the evidence. *Id.; see* TEX.R.APP.P. 33; *Stewart v. State*, 686 S.W.2d 118, 122 (Tex.Crim.App. 1984), *cert. denied,* 474 U.S. 866, 106 S.Ct. 190, 88 L.Ed.2d 159 (1985). Appellant failed to do so. Because we cannot determine whether exclusion of the evidence harmed her, nothing is preserved for review. Accordingly, her final point of error is overruled. We affirm the judgment.

CHEW, Justice, dissenting.

I must respectfully dissent.

The Court of Criminal Appeals, in reversing our earlier decision in this case stated:

> The *Barker* Court did not, however, acknowledge a community *right* to a speedy trial. We recognize the societal impact of those concerns voiced in *Barker, supra,* but the community does not have a right to demand a speedy trial in any given case. In other words, a community *interest* in a speedy trial exists, but there is no community *right* to a speedy trial in a specific instance. The four *Barker* balancing factors are in place to ensure that an individual defendant's Sixth Amendment right to a speedy trial is not violated. There is no equivalent community right. It was improper for the Court of Appeals to recognize such a right in the present case.

*Johnson v. State,* 954 S.W.2d 770, 772 (Tex. Crim.App.1997).

What a unanimous Supreme Court said in *Barker* was:

> The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes. It must be of little comfort to the residents of Christian County, Kentucky, to know that Barker was at large on bail for over four years while accused of a vicious and brutal murder of which he was ultimately convicted. Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation.

> If an accused cannot make bail, he is generally confined, as was Barker for 10 months, in a local jail. This contributes to the overcrowding and generally deplorable state of those institutions. Lengthy exposure to these conditions 'has a destructive effect on human character and makes the rehabilitation of the individual offender much more difficult.' At times the result may even be violent rioting. Finally, lengthy pretrial detention is costly. The cost of maintaining a prisoner in jail varies from $3 to $9 per day, and this amounts to millions across the Nation. In addition, society loses wages which might have been

**656**

earned, and it must often support families of incarcerated breadwinners.

A second difference between the right to speedy trial and the accused's other constitutional rights is that deprivation of the right may work to the accused's advantage. Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which carries the burden of proof. Thus, unlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not *per se* prejudice the accused's ability to defend himself.

Finally, and perhaps most importantly, the right to speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate.

*Barker,* 92 S.Ct. at 2186–87.

More than a decade after *Barker,* the Supreme Court said:

Delay increases the cost of pretrial detention and extends 'the period during which defendants released on bail may commit other crimes.' *United States v. MacDonald,* 435 U.S. 850, 862, 98 S.Ct. 1547, 1553, 56 L.Ed.2d 18 (1978). Delay between arrest and punishment prolongs public anxiety over community safety if a person accused of a serious crime is free on bail. It may also adversely affect the prospects for rehabilitation. See *Barker v. Wingo, supra,* 407 U.S., at 520, 92 S.Ct., at 2187. Finally, when a crime is committed against a community, the community has a strong collective psychological and moral interest in swiftly bringing the person responsible to justice. Prompt acquittal of a person wrongly accused, which forces prosecutorial investigation to continue, is as important as prompt conviction and sentence of a person rightly accused. Crime inflicts a wound on the community, and

that wound may not begin to heal until criminal·proceedings have come to an end. *Flanagan v. U.S.,* 465 U.S. 259, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288 (1984).

I continue to believe my vote was right the first time; therefore, I must respectfully decline to join the majority opinion here.