Opinion issued November 5, 2009














 

 






In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00933-CR

____________



ANDREW RODELL WILDER, Appellant


v.


THE STATE OF TEXAS, Appellee







On Appeal from the 209th District Court

Harris County, Texas

Trial Court Cause No. 1026573






MEMORANDUM OPINION


 A jury convicted appellant, Andrew Rodell Wilder, of the felony offense of
murder. See Tex. Penal Code Ann. §19.02(b)(1) (Vernon 2009). The trial court
assessed Wilder's punishment at six years' confinement in prison.

 In his first and second issues on appeal, appellant contends that the evidence
adduced at trial was legally and factually insufficient to prove that he was guilty of
the offense of murder. In his third issue, appellant complains that he was denied a
speedy trial as required by both the United States and Texas Constitutions. 

 We affirm.

FACTUAL BACKGROUND

 David Pillard, the complainant, had been dating Wrentha Wilder, appellant's
mother, when he arrived at Wilder's house and found Wilder's estranged husband,
Jeffrey Feggett Sr., hiding in a closet in appellant's bedroom. Appellant was Feggett
Sr.'s stepson. Pillard and Feggett Sr. began fighting and fell onto appellant as he
slept in his bed. After the fight between Feggett Sr. and Pillard had ended, appellant
punched Pillard and began to beat him.

 During the course of the fight between Feggett Sr. and Pillard, Wilder's other
children awoke and arrived in appellant's bedroom, where they witnessed appellant
beating Pillard, who was trying to shield himself. After appellant was pulled from
Pillard, everyone left the room except for Pillard, who remained on the floor. 

 Appellant's younger brother, Avery Feggett, told police that he was standing
in the doorway to appellant's bedroom when appellant returned. Avery then told
police that he witnessed appellant stab Pillard as he lay on the floor. At trial, Avery
testified that he lied to police when he made these statements because he was mad at
appellant for beating Pillard.

 After stabbing Pillard, appellant fled the residence, followed by Feggett. 
Pillard died en route to the hospital. 

DISCUSSION

A. Sufficiency of the Evidence

 1. Legal Sufficiency

 In his first issue, appellant challenges the legal sufficiency of the evidence. 
Specifically, appellant argues that none of the testimony indicates that he was in
possession of a knife or that he stabbed Pillard with a knife and that any evidence
linking appellant and the knife is circumstantial.

 The standard of review for legal sufficiency of the evidence is whether,
viewing the evidence in the light most favorable to the verdict, any rational trier of
fact could have found the essential elements of the crime beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979); King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The standard is the same for
direct and circumstantial evidence cases. King v. State, 895 S.W.2d 701, 703 (Tex.
Crim. App. 1995).

 In reviewing for legal sufficiency, we do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses because this is the function
of the trier of fact. See Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App.
1992); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). Instead, our
duty is to determine whether both the explicit and implicit findings of the trier of fact
are rational by viewing all of the evidence admitted at trial in the light most favorable
to the verdict. See Adelman, 828 S.W.2d at 422. In conducting our review, we
resolve any inconsistencies in the evidence in favor of the verdict. Matson, 819
S.W.2d at 843. Under the law applicable to this case, a person commits the
offense of murder if he intentionally or knowingly causes the death of another. Tex.
Penal Code Ann. § 19.02(b)(1) (Vernon 2009). Both Feggett Sr. and Wilder
testified that after Feggett Sr. had stopped fighting Pillard, appellant "cold-cocked"
Pillard and then proceeded to beat him. Wilder also testified that, after appellant had
been pulled off Pillard, all parties left appellant's bedroom, with the exception of
Pillard. Both Feggett Sr. and Wilder stated that at the time that everybody left the
room, there was blood only on Pillard's nose and mouth, but nowhere else on his
body. Feggett Sr. also told the jury that at the time that all the parties left Pillard
alone in the room, Pillard had not been stabbed.


 Jeffrey Feggett Jr., Wilder's 17-year-old son, testified that, after appellant had
left Pillard alone in the bedroom, appellant went into the kitchen and then back into
the bedroom. Jeffrey also told the jury that appellant kept knives in his room. 
Jeffrey stated that, after appellant had gone back into the bedroom with Pillard, he
witnessed appellant gather up his clothes and leave the house in a hurry. Jeffrey told
the jury that appellant stated, "He [Pillard] shouldn't have fallen on me." Following
appellant's flight from the house, Jeffrey testified that he went back to appellant's
bedroom to check on Pillard and found Pillard stabbed. 

 Moreover, Avery testified that he told police at the scene that he had seen
appellant stab Pillard, but that at trial he was lying when he made that statement. 
Because the jury is in the best position to determine reliability of available testimony
and evidence, we must defer to assessments by the jury that depend on credibility
determinations. See Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). 
The jury could have reasonably chosen to disbelieve Avery's testimony at trial and
to believe his statement to police that he had witnessed appellant fatally stab Pillard. 

 Finally, Feggett Sr. testified that appellant exclaimed that he "dropped that
mother fucker" and that appellant stated as he ran out of the house that "he [Pillard]
won't be coming back over here anymore." Flight has long been held to be indicative
of consciousness of guilt, and the jury can infer guilt from evidence of flight. Burks
v. State, 876 S.W.2d 877, 903 (Tex. Crim. App. 1994). Thus, the jury could
reasonably have considered appellant's statement and his flight additional pieces of
incriminating circumstantial evidence. 

 We hold that the evidence is legally sufficient to support the jury's implicit
finding that appellant intentionally or knowingly caused the complainant's death. 
Accordingly, we overrule the appellant's first issue.

 2. Factual Sufficiency

 In his second issue, appellant contends that the evidence was factually
insufficient to support his conviction for murder. When conducting a factual-
sufficiency review, we view all of the evidence in a neutral light. Cain v. State, 958
S.W.2d 404, 408 (Tex. Crim. App. 1997). We will set aside the verdict only if (1) the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the
verdict is against the great weight and preponderance of the evidence. Johnson v.
State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Under the first prong of Johnson, we
cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply
because, on the quantum of evidence admitted, we would have voted to acquit had we
been on the jury. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). 
Under the second prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury's resolution of that
conflict. Id. Before concluding that evidence is factually insufficient to support a
verdict under the second prong of Johnson, we must be able to say, with some
objective basis in the record, that the great weight and preponderance of the evidence
contradicts the jury's verdict. Id. In conducting a factual-sufficiency review, we
must also discuss the evidence that, according to the appellant, most undermines the
jury's verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

 We may not substitute our judgment for that of the fact-finder. King, 29
S.W.3d at 563. The fact-finder alone determines what weight to place on
contradictory testimonial evidence because that determination depends on the fact-finder's evaluation of credibility and demeanor. Cain, 958 S.W.2d at 408-09. As the
judge of the credibility of the witnesses, the fact-finder may choose to believe all,
some, or none of the testimony presented. Id. at 407 n.4. The standard for reviewing
the factual sufficiency of the evidence is whether, after considering all of the evidence
in a neutral light, the jury was rationally justified in finding guilt beyond a reasonable
doubt. See Watson, 204 S.W.3d at 415.

 Appellant argues that the evidence against him was factually insufficient to
support his conviction because there was no eyewitness. However, as we have
discussed, circumstantial evidence alone is sufficient to establish guilt. Guevara v.
State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). It is not necessary that every fact
point directly and independently to the defendant's guilt; it is enough if the
conclusion is warranted by the combined and cumulative force of all the
incriminating circumstances. Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim.
App. 1993). Additionally, Avery was an eyewitness to the incident because he
actually saw appellant stab Pillard, even if Avery later recanted at trial.

 Thus, the jury's conclusion that appellant was guilty of Pillard's murder is
supported by the "combined and cumulative force" of all of the evidence previously
set forth. See id. In light of all of the evidence, there is no objective basis in the
record from which we may conclude that the evidence supporting the jury's implicit
finding that appellant knowingly or intentionally caused the death of the complainant
was so weak as to render the jury's verdict clearly wrong and manifestly unjust or that
it was against the great weight and preponderance of the evidence. See Johnson, 23
S.W.3d at 11. We therefore hold that the evidence is factually sufficient to support
appellant's conviction, and we overrule appellant's second issue. 

B. Denial of a Speedy Trial

 In his third issue, appellant contends that his speedy trial right was violated due
to a 42-month delay between his indictment and trial and that such delay caused him
prejudice. Specifically, appellant asserted before the trial court that "defense
witnesses have become unavailable and such witnesses . . . will have forgotten the
facts that would be beneficial to the Defendant." 

 In our review of a challenge to the denial of the right to a speedy trial, we apply
an abuse-of-discretion standard to any factual issues, while using a de novo standard
to the legal conclusions. See Zamorano v. State, 84 S.W.3d 643, 648 (Tex. Crim.
App. 2002). 

 The United States Constitution provides, "In all criminal prosecutions, the
accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend.
VI. The Texas Constitution also grants this right. Tex. Const. art. I, § 10. Texas
courts have traditionally analyzed speedy-trial-violation challenges under the
balancing test announced by the United States Supreme Court in the case of Barker
v. Wingo, 407 U.S. 514, 92 S. Ct. 2182 (1972). See Zamorano, 84 S.W.3d at 647-48. 
We employ this balancing test by analyzing four factors: (1) the length of the delay;
(2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the
prejudice to the defendant. See Barker, 407 U.S. at 530, 92 S. Ct. at 2192. None of
these factors should be considered necessary or sufficient in the finding of a
deprivation of the right to a speedy trial; rather, they are related factors that must be
considered together with such other circumstances as may be relevant. See State v.
Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).

 1. The Length of the Delay

 The length of the delay between the date of indictment and the date of trial
functions as a "triggering mechanism" for the analysis of the other three factors. 
Barker, 407 U.S. at 530, 92 S. Ct. at 2192; Munoz, 991 S.W.2d at 821. The defendant
must allege that the delay in his or her case has crossed the line from ordinary delay
to presumptively prejudicial delay. Doggett v. United States, 505 U.S. 647, 651-52,
112 S. Ct. 2686, 2690 (1992). For the alleged delay to qualify as "presumptively
prejudicial," it must be reviewed in the context of the particular case in which it is
alleged. See Barker, 407 U.S. at 530-31, 92 S. Ct. at 2192. The 42-month delay in
this case is substantial enough to trigger a speedy trial analysis. See Shaw v. State,
117 S.W.3d 883, 889 (Tex. Crim. App. 2003) (concluding that 38-month delay
between indictment and trial was long enough to trigger speedy trial analysis).

 2. The Reason for the Delay

 An examination of this factor requires an assignment of "different weights to
different reasons." Barker, 407 U.S. at 531, 92 S. Ct. at 2192; see Munoz, 991
S.W.2d at 822. A finding that the government deliberately attempted to delay the trial
would require us to weigh this factor heavily against the State. Munoz, 991 S.W.2d
at 822 (citing Barker, 407 U.S. at 531, 92 S. Ct. at 2192). However, a more neutral
reason, such as negligence or an overcrowded docket, should be weighed less heavily. 
Id.

 In this case, the State offered nothing in the way of reasons for the delay
because it did not respond to appellant's motion to dismiss for failure to provide a
speedy trial. However, on appeal the State asserts, and the record supports, that the
reason for the delay was not due "solely to the State's lack of diligence," as
appellant's motion contends. In fact, appellant joined the State 20 times in requesting
that his trial be reset to a future date. The record also reflects that after appellant had
filed a motion to dismiss for failure to provide a speedy trial, he agreed to further
resettings of his case. Additionally, at the time that appellant filed his motion to
dismiss with the clerk, his case was taken off the court's trial docket because he had
committed a new offense while on bond for the instant case. Finally, the record does
not reflect that any hearing was held on appellant's motion to dismiss due to failure
to provide a speedy trial. 

 Nevertheless, because no reason for the delay was given before the trial court,
this factor must weigh against the State. See Dragoo v. State, 96 S.W.3d 308, 314
(Tex. Crim. App. 2003). However, when weighing this factor, a court may presume
neither a deliberate attempt on the part of the State to prejudice the defense nor a
valid reason for the delay. Id. Therefore, we hold that this factor weighs against the
State, but it is not weighed heavily. See id. 

 3. Appellant's Assertion of His Right

 The Barker Court rejected the rigid "demand-waiver" rule, which held that a
defendant "forever" waived any speedy trial challenge if he never, in fact, actually
asserted his right to a speedy trial. Barker, 407 U.S. at 527-29, 92 S. Ct. at 2190-91. 
However, the "defendant still is responsible for asserting or demanding his right to
a speedy trial." Munoz, 991 S.W.2d at 825. The Barker Court also emphasized that
the "failure to assert the right will make it difficult for a defendant to prove that he
was denied a speedy trial." Barker, 407 U.S. at 532, 92 S. Ct. at 2193.

 In this case, the only pleading submitted by counsel in the matter was filed
nearly three years after appellant's indictment and did not ask for a speedy trial, but
instead asked for a dismissal for lack of a speedy trial. Additionally, appellant never
filed a motion to proceed to trial. A defendant's action in filing for a dismissal,
instead of a speedy trial, weakens a speedy-trial claim because it shows a desire to
have no trial instead of a speedy one. See Dragoo, 96 S.W.3d at 314. "[L]ack of a
timely demand for a speedy trial indicates strongly that [the defendant] did not really
want a speedy trial." Id. (emphasis added). Thus, we hold that this factor weighs
heavily against appellant.

 4. Prejudice to Appellant

 This factor is viewed in light of the interests that the speedy trial right was
meant to protect. Barker, 407 U.S. at 532, 92 S. Ct. at 2193. These interests are (1)
to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of
the accused; and (3) to limit the possibility that the defense will be impaired. Id.;
Munoz, 991 S.W.2d at 826. The third factor is to be regarded with the most
importance because it is paramount to our judicial system that an accused have the
ability to defend himself adequately. See Munoz, 991 S.W.2d at 826. It is not
essential that a defendant show affirmative proof of prejudice because "excessive
delay presumptively compromises the reliability of a trial." Doggett, 505 U.S. at 655,
112 S. Ct. at 2692-93; see Shaw, 117 S.W.3d at 890. However, this presumption is
negated by the defendant's failure to assert his speedy trial right. See Shaw, 117
S.W.3d at 890.

 In the instant case, appellant was incarcerated pre-trial, but does not assert that
such incarceration was oppressive. In fact, appellant agreed to numerous trial
resettings while he was incarcerated, which factors against any claim of oppressive
pre-trial incarceration. Moreover, there is no evidence that appellant suffered from
any mental anxiety due to the 42-month delay. Thus, appellant has not shown
prejudice based on the first two interests.

 Appellant further alleges that his defense was impaired due to the loss of
potential witnesses who "will have forgotten facts." However, appellant does not
indicate who these witnesses are or what facts they may provide. These generalized
complaints do not support a showing of prejudice. In contending that prejudice
results from witness unavailability, a defendant must demonstrate that (1) the witness
was unavailable at the time of trial: (2) the witness's testimony may be relevant and
material to the defense; and (3) the defendant exercised due diligence in an attempt
to locate the witness at the time of trial. See Phipps v. State, 630 S.W.2d 942, 947
(Tex. Crim. App. 1982); Johnson v. State, 975 S.W.2d 644, 652 (Tex. App.--El Paso
1998, pet. ref'd). Appellant has failed to make this showing and, accordingly, has not
shown prejudice. See Phipps, 630 S.W.2d at 947; Ervin, 125 S.W.3d 542, 548 (Tex.
App.--Houston [1st Dist.] 2002, no pet.); Parkerson v. State, 942 S.W.2d 789,
792-93 (Tex. App.--Fort Worth 1997, no pet.).

 5. Balancing Test

 Weighing in favor of finding a violation of appellant's speedy trial right are the
facts that the delay here was excessive and that the State offered no reason for the
delay. Weighing against finding a violation of the right are the facts that the
defendant failed to demonstrate prejudice and that he acquiesced in the delay,
indicating that he really did not want a speedy trial. We hold that the weight of the
four factors, balanced together, is against finding a violation of appellant's right to
a speedy trial. See Barker, 407 U.S. at 533-34, 92 S. Ct. 2182 at 2193-94 (where
defendant was not seriously prejudiced by five-year delay between arrest and trial and
defendant did not want speedy trial, defendant's Sixth Amendment right to speedy
trial was not violated); Phipps, 630 S.W.2d at 946 (when defendant demonstrated no
prejudice by four-year delay between arrest and trial and defendant waited until one
month before trial to assert his right to a speedy trial, defendant's Sixth Amendment
right to speedy trial was not violated). 

CONCLUSION


 Having overruled all of appellant's issues on appeal, we affirm the judgment
of the trial court. 







 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Bland and Massengale.


Do not publish. Tex. R. App. P. 47.2(b).